Eddy Johnson, the appellant, was indicted and convicted of robbery in the first degree. Sentence was 35 years' imprisonment. Four issues are argued on appeal.
 I
An arraignment can be waived by a defendant by failing to object to the lack of an arraignment until after the jury has returned a verdict. Watts v. State (Ms. 82-676, December 9, 1983) (Ala. 1983); Fernandez v. State, 7 Ala. 511 (1845).
Here, Johnson was present with counsel when his case was called for trial. The trial judge read the indictment to the jury. At trial, Johnson took the witness stand in his own defense and denied committing the robbery. Although the trial judge found that there was nothing in the court reporter's record to indicate that Johnson had been arraigned, he also noted that the docket sheet reflected that Johnson had been arraigned and pled not guilty. Defense counsel testified that there was no arraignment. In view of this conflicting evidence, the judgment of the trial judge should stand undisturbed. "When the trial judge sits as a finder of fact and hears and observes witnesses as they speak, his judgment is presumed correct and will not be *Page 1325 
reversed if it is supported by legal evidence and is not clearly wrong and unjust." O'Leary v. State, 417 So.2d 217, 218
(Ala. 1981).
For these reasons, we find no error.
 II
Johnson argues that the warrantless arrest at his home was unlawful under Payton v. New York, 445 U.S. 573,100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and therefore his subsequent statement to the police was inadmissible. Payton held that, in the absence of exigent circumstances, "the Fourth Amendment . . . prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." 445 U.S. at 576,100 S.Ct. at 1374-1375. See also United States v. Johnson, 457 U.S. 537,102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).
On April 1, 1982, the victim told Mobile Police Sergeant Wayne Farmer that Eddy Johnson had robbed her. On April 5th, Farmer learned Johnson's address and went to his home. A female came to the door and, in response to Farmer's question, indicated that Johnson was home. Johnson came to the door and was told by Sergeant Farmer that they "wanted him to come to town . . . to talk to him about this incident." Johnson complied with this request. Farmer testified that if Johnson had refused he would have gotten a warrant "if we had to", but that Johnson came "voluntarily".
"Payton, did not purport to decide, . . . whether an initial consensual entry would justify a subsequent warrantless arrest." United States v. White, 660 F.2d 1178, 1182-83 (7th Cir. 1981) (upholding warrantless entry into defendant's apartment based on deceitfully obtained consent when entry served investigative purposes). See also United States v. RuizAltschiller, 694 F.2d 1104 (8th Cir. 1982), cert. denied, Perryv. United States, ___ U.S. ___, 103 S.Ct. 3117, 77 L.Ed.2d 1371
(1983).
Here, the record fails to show that Johnson's Fourth Amendment rights were violated by the manner of his arrest."Absent consent or exigent circumstances, a private home may not be entered to conduct a search or effect an arrest without a warrant." Donovan v. Dewey, 452 U.S. 594, 598 n. 6,101 S.Ct. 2534, 2538 n. 6, 69 L.Ed.2d 262 (1981) (emphasis added). The import of Detective Farmer's testimony is that Johnson voluntarily went with the officers to headquarters. Farmer would have obtained an arrest warrant if Johnson had disagreed. These facts simply do not support a finding of a violation of Johnson's Fourth Amendment rights. Although we do not encourage warrantless arrests at the home of the accused, the conduct of the police officers in this case is not that sought to be condemned in Payton.
 III
Johnson argues that the State failed to lay the proper predicate for the admission of his statement because Sergeant Farmer was not constantly in Johnson's presence and could not testify that no other officer talked to Johnson.
Farmer's testimony shows that he was with Johnson from the time they picked him up at his house and read him his Miranda
rights until Johnson gave a statement except for the few times Farmer stepped out of the office. Farmer stated that he was "sure (he) probably left the room we were in" on "several occasions" but that he "was never gone for over probably two minutes at a time." Farmer testified that there "were people in and out of the office" while he was in the office with Johnson. Farmer "didn't believe" any statements were made to Johnson by any other officers while he was gone. There is absolutely no testimony that anyone threatened or improperly questioned Johnson in any manner at any time.
Here also, Johnson signed a printed waiver of rights form before giving his oral *Page 1326 
statement. Reviewing all the facts and circumstances of this case, we find that the confession was properly admitted. The State, "having established by the preliminary proof the voluntary nature of the confession, was not required . . . to array for interrogation every person who might have had access to or conversation with the prisoner during his incarceration in order to remove the prima facie presumption of involuntariness." Logan v. State, 251 Ala. 441, 444,37 So.2d 753, 755 (1948); McCovery v. State, 365 So.2d 358, 361
(Ala.Cr.App. 1978).
 IV
Finally, Johnson contends that the victim's in-court identification should have been suppressed because her identification was tainted and unreliable.
In his brief on appeal, Johnson lists the following facts from the hearing on his motion to suppress to support his argument:
 "(1) A police officer, incorrectly identified as Sgt. Wayne Farmer by the victim, brought one single picture to the hospital for the victim to identify. He asked her, `Was that the fellow?' (Detective David Barnes was the officer who showed Johnson's photograph to the victim).
 "(2) The victim gave a description of the man that attacked her as being 5'10" and 150 pounds. Sgt. Farmer testified the Defendant was between 6'2" and 6'3".
 "(3) The victim testified that she saw the Defendant on the day of the preliminary hearing outside the courtroom talking. (The Defendant had not made bond and was in fact in the jail slot prior to being brought into the Court.)
 "(4) The victim was notified by phone on the morning of the trial and told that the man who robbed her was going to be in court that morning.
 "(5) Sgt. Farmer or District Attorney Don Bebee told the victim that the man who robbed her was going to be sitting at the defense table. (Her actual response was `I reckon so.').
 "(6) She was told that Eddy Johnson `would be down here' for the trial.
 "(7) Neil Hanley testified that at the preliminary hearing, the victim had an opportunity to clearly observe the Defendant but failed to recognize him.
 "(8) The victim did tell Sgt. Farmer that the assailant's name was Eddy and he had done yard work for her."
He also contends that the following facts adduced during the trial support his argument for suppression of the in-court identification.
 "(1) The assailant came to the victim's house at night between 7:00 and 8:00 P.M.
 "(2) The victim testified that the man who assaulted her was named Eddy Jones. She was corrected by the District Attorney, over the objection of the Defendant.
 "(3) The victim testified that there were other people who did yard work for her.
 "(4) On the night of the attack, the victim had taken medication for pressure.
 "(5) The victim did not have her glasses on when she was assaulted.
 "(6) Eddy Johnson testified that he is 6'3' and weighs 183 pounds."
In this case the seventy-seven year old victim was robbed and raped by a single individual. After the attack and before she was taken to the hospital, she told Sergeant Farmer that "it was the man who done her yard work for her" and his name was "Eddy". The victim testified that she did not identify Johnson at the preliminary hearing because someone obstructed her view: "I couldn't recognize him because it was a lady when I turned to look in the man's face, the lady turned too — the lady."
 "I saw the one sitting in the corner, but when I looked I couldn't see his face good. When I looked it was a lady there at the table — she moved that way and he moved that way. When I turned my *Page 1327 
head to try and see his face, she moved that way. But I couldn't see his face good but I remember that it was him, but I didn't say it because I wasn't sure."
However, the victim also testified that she recognized her assailant standing outside the courtroom before the preliminary hearing. She testified that before trial someone called her and told her "they was going to have Eddy Johnson's trial today, and for me to come down" and that Johnson "would be down here."
Attorney Neil Hanley testified as a defense witness on the motion to suppress. He stated that at the preliminary hearing Johnson "came out of lockup." Apparently, this contradicted the victim's testimony that Johnson was standing outside the courtroom. Hanley also stated that at the preliminary hearing the assistant district attorney was standing "almost beside" Johnson and, when asked, the victim still could not identify her assailant. Hanley testified that there was no one standing between the victim and Johnson and that Johnson was sitting in the middle of the front row and not in the corner as the victim testified.
At the preliminary hearing, the judge made a finding of no probable cause when the victim could not identify her assailant.
Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967,18 L.Ed.2d 1199 (1967), established a due process right to exclude unreliable identification testimony that results from procedures that are both unnecessarily suggestive and conducive to irreparable mistaken identification. Neil v. Biggers,409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), established the rule that, where the witness's in-court identification arguably stems from a suggestive out-of-court identification, the question is "whether under the `totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive", 409 U.S. at 199, 93 S.Ct. at 382, and whether there was a substantial likelihood of misidentification. Manson v. Brathwaite, 432 U.S. 98,97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), held that, where a pretrial identification is obtained by a procedure that is both suggestive and unnecessary, "reliability is the linchpin in determining the admissibility of identification testimony",432 U.S. at 114, 97 S.Ct. at 2253, and that the reliability of the identification must be weighed against the corrupting effect of the suggestive identification procedure itself. However, identification evidence derived from an unnecessarily suggestive source need not be excluded if the totality of the circumstances indicates its reliability.
Here, the only hints of suggestiveness in the pretrial identification procedures are the facts that the victim was shown a single photograph of the man she had previously identified by name and occupation as being her assailant, and that someone told her that Johnson would be in court.
It is clear to this Court, as it was to the trial judge, that the victim's identification is based upon what she observed or thought she observed during the assault. The trial judge accurately stated the situation:
 "(T)he way I see this thing if this identification was based solely upon that one photograph shown to her, I would probably grant your motion in no time flat. But since identification is now made not from that photograph but on the fact that she knew the man before the incident, that he had the relationship of having been an employee, and that she, of course, being the victim of the robbery — alleged robbery and rape — certainly would have been able to be close enough to him to recognize the man as the one who worked for her. I don't think there is any question in my mind that she can identify him. Whether it's an accurate identification is a matter for the jury. But I don't think I can suppress it."
Here, we think that it is clear that the in-court identification stems from an independent *Page 1328 
source and is not the result of any unfair pretrial confrontation. Brazell v. State, 369 So.2d 25, 29 (Ala.Cr.App. 1978), cert. denied, Ex parte Brazell, 369 So.2d 31 (Ala. 1979). "(I)t is incumbent upon a defendant to establish that the confrontation procedure in fact was suggestive prior to reaching the threshold `totality of the circumstances' test of reliability." United States v. Briggs, 700 F.2d 408, 412 (7th Cir.), cert. denied, Schlacks v. United States, ___ U.S. ___,103 S.Ct. 2129, 77 L.Ed.2d 1307 (1983).
While the quality of the victim's description of her assailant and her failure to identify him at the preliminary hearing do warrant cause for concern, these factors go to the weight and credibility of the victim's identification rather than its admissibility. "(A) witness's prior inability to identify a defendant goes to the credibility of the in-court identification and not to its admissibility, and thus raises a proper question of fact for the jury to determine." Briggs, 700 F.2d at 413.
 "Failure to identify a defendant does not automatically bar the testimony of a witness. United States v. Serlin, 7 Cir., 538 F.2d 737, 747-748. The failure of a witness to identify presents `nothing more than a matter for factual argument to the jury.' United States v. Scarpellino, 8 Cir., 431 F.2d 475, 477. The effect is on the weight, not the efficacy, of the evidence. United States v. Rizzo, 7 Cir., 418 F.2d 71, 81, cert. denied, 397 U.S. 967, 90 S.Ct. 1006, 25 L.Ed.2d 260."
 United States v. Skipworth, 697 F.2d 281, 284 (10th Cir. 1983).
 "The fact that eye witnesses to an occurrence cannot make a positive identification of an individual from an examination of photographs of a number of persons, does not necessarily detract from the validity of their in-court identification where they see the individual in person. The weight to be given to their in-court identification is for the jury to determine."
 United States v. Black, 412 F.2d 687, 689 (6th Cir. 1969), cert. denied, 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970).
See also United States v. Hamilton, 684 F.2d 380, 383 (6th Cir.), cert. denied, 459 U.S. 976, 103 S.Ct. 312,74 L.Ed.2d 291 (1982) ("Muszynski's inability to pick Hamilton out of the photo array did not render his in-court identification invalid.United States v. Dobson, 512 F.2d 615 (6th Cir. 1975). The weight to be given to his identification was a jury question.Id. at 616.").
Support for this principle is found in Alabama law. "The fact that the witness was unable to make an identification of the defendant from the photographic line-up conducted the night of the crime does not require the exclusion of his in-court identification, but rather goes to the weight and credibility of his testimony." Carter v. State, 406 So.2d 1076, 1077
(Ala.Cr.App. 1981). "The discrepancies or contradictions in (the victim's) testimony are factors bearing on the credibility of the witness and concern the weight and probative value to be given his testimony by the jury. These factors do not concern the admissibility of (the victim's) testimony." Phillips v.State, 409 So.2d 918, 920 (Ala.Cr.App. 1981). The "confused nature" of the victim's identification testimony does not necessarily result from a misidentification but may be caused by the victim's "utter lack of knowledge concerning courtroom procedures; from confusing and repetitious questions on cross-examination; and (the victim's) apparent inability to estimate distances." Herrod v. State, 342 So.2d 1388, 1390
(Ala.Cr.App. 1977). "The question of whether the victim's identification was positive or not goes to the weight and credibility of her testimony, and was a question for the jury."Williams v. State, 348 So.2d 1101, 1104 (Ala.Cr.App.), cert. denied, Ex parte Williams, 348 So.2d 1105 (Ala. 1977). See alsoJones v. State, 415 So.2d 1233, 1236 (Ala.Cr.App. 1982). Cf.United States v. Gambrill, 449 F.2d 1148, 1158 (D.C. Cir. 1971) (Witness's "complete inability to select *Page 1329 
Gambrill at the first lineup held within six days of the crime is a circumstance that compels us, in view of the intervening exhibition of the two single photographs, and the 10-man lineup photograph and the strong suggestiveness that comes from seeing two Negroes seated at counsel table, both of whom she had viewed at the lineup, to conclude that her identification of appellants cannot stand."). See also Gholston v. State,338 So.2d 454 (Ala.Cr.App. 1976). "We have repeatedly held that it is the sole province of the jury to determine what credence should be given to testimony of witnesses going to the identity of an accused." Strickland v. State, 348 So.2d 1105, 1110
(Ala.Cr.App.), cert. denied, 348 So.2d 1113 (Ala. 1977).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.