Appellants, Kenneth and Michael Thornton, were each found guilty, following a jury trial, of robbery in the second degree, kidnapping in the second degree, rape in the first degree, and sodomy in the first degree. The trial court sentenced each appellant to terms of twenty years in the penitentiary for the kidnapping conviction; ninety-nine years for the rape conviction; and ninety-nine years for the sodomy conviction. The court ordered that the sentences be served consecutively.
On August 20, 1983, the victim and her husband were visiting a nightclub in Birmingham, Jefferson County, known as "Baby Doe's." At approximately 12:15 a.m., they decided to return home. The victim's husband was to pay the bill and obtain their automobile, which was parked in an area some distance from the establishment. The victim went to the restroom and then proceeded outside the building to wait for her husband. As she approached the parking area, a black Oldsmobile Delta 88 automobile drove up at a fast rate of speed. A male, subsequently identified as Stanley Wilson, jumped out of the vehicle and forcibly placed the victim, who was kicking and screaming, in the back floorboard area of the car. Wilson pinned her to the floorboard by placing his feet on her chest. Two other males, subsequently identified as Kenneth and Michael Thornton, were occupying the front seat of the vehicle, with Michael driving and Kenneth in the passenger seat. As Wilson was forcing the victim into the vehicle, she dropped her purse. Wilson instructed Kenneth to retrieve the purse. The victim testified that she was "screaming" when abducted and continued to scream until Wilson "screamed" at her to "shut up."
The victim was taken to a house in Titusville. En route, she was forced to have sexual intercourse and oral sex with Wilson. At one point, Kenneth turned to watch and Wilson told him to "turn around, that he would get his turn." When the vehicle stopped at the house in Titusville, Wilson took $50 from the victim's purse. Michael took the victim's wedding rings, watch, necklace, and earrings from her person. The victim was then led, nude, into the house. During the following hours, she was repeatedly raped, sodomized, and forced to perform fellatio with Wilson, Michael and Kenneth Thornton, and three other unidentified males. The bedroom in which she was held was lighted, and she had ample opportunity to view her captors. She was subsequently returned by Wilson to the Roebuck area of Birmingham, where she was released.
 I
Appellants first contend that the consolidation of their trials was fundamentally unfair because both appellants were represented by the same attorney, who allegedly had a conflict of interest. We first note that counsel was retained by appellants and that no conflict of interest contention was presented to the trial court until appellants filed a motion for a new trial. No such ground was asserted in the pre-trial proceedings pertaining to the motion to consolidate.
In addressing the conflict of interest claim raised by appellants, we find guidance in Cuyler v. Sullivan,446 U.S. 335, 346-47, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980), wherein the Court stated:
 "Holloway [v. Arkansas, 435 U.S. 475, 95 S.Ct. 1173, 55 L.Ed.2d 426 (1978),] requires state trial courts to investigate timely objections to multiple representation. But nothing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case. Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial. Absent special circumstances, therefore, *Page 85 
trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist. . . . Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." (Footnotes omitted.)
The Court continued, noting that "a possible conflict inheres in almost every instance of multiple representation,"id. 446 U.S. at 348, 100 S.Ct. at 1718, and set forth the standard of review for a conflict of interest claim, where the appellant raised no timely objection at trial:
 "We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance."
Id. at 350, 100 S.Ct. at 1719.
In the instant case, appellant Kenneth Thornton had retained independent legal counsel through the preliminary hearing stage, at which time his retained attorney, C. Burton Dunn, moved to withdraw as counsel due to Kenneth Thornton's inability to pay the attorney's "legal fees for . . . services in the Circuit Court proceedings." The motion to withdraw was granted, and on January 23, 1984, the court appointed attorney Hugh Henderson to represent appellant Kenneth Thornton. By letter dated February 9, 1984, Mr. Henderson informed the court that appellant Kenneth Thornton had advised him that attorney Robert Turner had been retained to represent that appellant.
Kenneth and Michael Thornton have been continuously represented by Mr. Robert Turner from February 9, 1984, to the present time. He represented them during their trial and represents them on this appeal. At no point did counsel object to the consolidation based on the ground of dual representation, either during pre-trial proceedings or during the trial, nor did counsel suggest that another attorney was desired. Therefore, we find nothing in the circumstances of this case which indicates that the trial court had a duty to inquire whether there was a conflict of interest. There was no apparent conflict of interest in the proceedings. The trial court could have properly assumed, under these facts, that the multiple representation entailed no conflicts or that appellants knowingly accepted such risk of conflict as may have existed.
Furthermore, appellants have failed to establish that multiple representation violated their Sixth Amendment right to conflict-free counsel. There is nothing in the record or presented at the hearing on appellants' motion for new trial that establishes that an actual conflict of interest adversely affected counsel's performance. See Ex parte Paradise,477 So.2d 948 (Ala. 1985).
 II
Appellants contend that the State systematically excluded all blacks from the petit jury by use of its peremptory challenges. The record tends to establish that there were nine or ten blacks on the jury panel, all of whom were struck by the State.
At the conclusion of the striking of the jury, the court asked defense counsel, "Are you satisfied the right people are in the jury box?" Defense counsel responded, "Yes, sir." The court then dismissed the remaining venire members. The court made introductory comments to the jury and then dismissed them for the evening. The next day, prior to the jury being sworn, appellants objected to the make-up of the jury, asserting that the State had systematically excluded all blacks.
Recently, in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,1718-19, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that the "State's privilege to strike individual jurors through peremptory challenges is subject to the commands of the Equal Protection Clause," which "forbids the prosecutor from challenging potential jurors solely on the basis of their race." The prosecution in Batson used its peremptory challenges to remove all blacks from the petit jury. The Court noted that timely objections were asserted to the prosecution's removal of all blacks on the venire and remanded the case in order for the trial court to determine if a prima facie case of *Page 86 
systematic exclusion was presented, and if so, to allow the prosecution the opportunity to come forward with racially neutral explanations for its actions. Id., 476 U.S. ___,106 S.Ct. at 1712. The Court held that if the State could not adduce sufficient racially neutral explanations for its peremptory challenges of blacks from the petit jury, then Equal Protection considerations would require reversal.
In United States v. Erwin, 793 F.2d 656 (5th Cir.), cert. denied, ___ U.S. ___, 107 S.Ct. 589, 93 L.Ed.2d 590 (1986), the defendant did not object to the make-up of the jury until after the jury had been selected and the remainder of the venire had been dismissed. The Fifth Circuit held that under these facts,Batson was inapplicable because the motion was untimely. Id.
at 667.
As in Erwin, the objection in the instant case was untimely; thus, we conclude that Batson does not apply to this case. The trial court did not abuse its discretion in overruling appellants' objection.
 III
Appellant next contends that the trial court committed reversible error in allowing the in-court identification of Michael and Kenneth Thornton by the victim. The evidence adduced at the hearing on the motion to suppress the in-court identification establishes that the victim incorrectly identified a third party as being Kenneth Thornton prior to her subsequent identification of Kenneth Thornton at a physical lineup. It is also asserted that the victim never actually identified Michael Thornton until the preliminary hearing.
In determining whether an out-of-court identification procedure has irreparably tainted an in-court identification, we apply a "totality of the circumstances" test to determine if the defendant has been denied due process by the in-court identification. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967,18 L.Ed.2d 1199 (1967); Pack v. State, 461 So.2d 910
(Ala.Cr.App. 1984). We have reviewed the testimony adduced at the hearing conducted on appellants' motion and find absolutely no support for appellants' contention that the out-of-court identification procedures were impermissibly suggestive.
As was stated in Johnson v. State, 453 So.2d 1323, 1328
(Ala.Cr.App. 1984), quoting United States v. Briggs,700 F.2d 408, 413 (7th Cir.), cert. denied, 462 U.S. 1110,103 S.Ct. 2463, 77 L.Ed.2d 1340 (1983):
 "[A] witness's prior inability to identify a defendant goes to the credibility of the in-court identification and not to its admissibility, and thus raises a proper question of fact for the jury to determine."
An excellent discussion of the law pertaining to prior inability to identify a defendant is contained inJohnson, 453 So.2d at 1328, and the law need not be restated here. We hold that the victim's prior misidentification of Kenneth Thornton and her failure to identify Michael Thornton before the preliminary hearing are matters which properly go to the credibility of the in-court indentification and not to the admissibility. We find no error in the trial court's allowing the victim to identify appellants in court.
We have reviewed the remaining issues raised by appellants and find that they are without merit. Based on the foregoing, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.