TYSON, Judge.
Cleve E. McCostlin and Sherry T. McCostlin were indicted for arson, in violation of § 13A-7-42, Code of Alabama 1975. They were found “guilty as charged in the indictment.” Cleve McCostlin was sentenced to life imprisonment under the Habitual Felony Offender Act. Sherry McCostlin was sentenced to four years in prison.
The record reveals that the appellant’s neighbor, Jerri Morgan, saw Mrs. McCost-lin emptying some trash outside of the McCostlin house at approximately 9:00 a.m. on December 29, 1988. At approximately 1:30 p.m., Morgan looked out of her kitchen window and saw dark smoke coming out from under the eaves of the McCostlin house.
Terry Beckham of the West Blount Fire and Rescue Squad responded to a call concerning the appellants’ house. When he drove up to the house, he saw thick, black smoke coming from all of the natural vent openings. No flames were visible. He kicked open the front door. There was thick black smoke from the floor to the ceiling. He found fire in the hallway and extinguished the flames. All of the windows in the house were closed. One of the windows was closed, but not locked. One of the burners on the electric stove was in the “on” position but the burner itself was not glowing hot.
After the fire was extinguished, Beck-ham saw plastic milk jugs filled with liquid tied with a necktie to a doorknob in the back bedroom. The milk jugs smelled like gasoline. There were also “trailers” set up in two or three different places in the house. The trailers consisted of paper towels that extended from candles to the milk *216 jugs. There was a larger bundle of paper towels under the milk jugs. The fire was primarily concentrated in the hallway area where the remnants of a plastic milk jug were discovered. Beckham testified that there was a low burn pattern. On the day of the fire, the weather was clear and there was no lightning or thunder. Numerous photographs of the scene, including photographs of the milk jugs and the trailers, were admitted into evidence during Beck-ham’s testimony.
Vickie Bates, chief of the West Blount Fire and Rescue Squad, also responded to the 1:30 p.m. alarm. All of the windows were blackened by smoke when she arrived. There was also heavy black smoke along the eaves and coming out of the natural openings of the house. She did not observe any open windows. She saw three plastic milk jugs containing a petroleum product that smelled like gasoline. She also found the remnants of another jug in front of the entrance to the master bedroom. She found two milk jug caps in the kitchen trash can. There were no milk jugs found inside or outside of the house other than those found in the bedrooms and the remnants found in the hallway.
The appellants arrived at the house at approximately 2:50 p.m. The appellants stated that they had been to the hospital. Mrs. McCostlin asked Bates about her cat.
Richard Montgomery of the Alabama Fire Marshall’s Office investigated the fire. He started his investigation at approximately 4:00 p.m. on the day of the fire. There was no evidence that the house had been ransacked. There was no evidence of forced entry at the back door.[1] He also observed the milk jugs, candles, and trailers. He testified that the jugs hanging from the doorknobs were approximately a foot off the floor. Another jug was on a bedroom nightstand. He found a melted plastic container which appeared to have been a milk jug outside the door to the master bedroom. He testified that the origin of the fire was in the hallway. He further testified that the stove did not contribute to the fire.
The appellants went into the house to determine if anything was missing. Mrs. McCostlin stated that $500, which had been tacked under her jewelry box, was missing. She also stated that a watch, a Masonic ring, an Eastern Star ring, a necklace, and earrings were missing. She also stated that some wedding candles were missing. Her son, Barry, stated that $70 was missing from a styrofoam container in his room. Mrs. McCostlin stated that prior to the fire, she had a gallon of gasoline in a milk jug in the den, a part of a gallon of gasoline in a milk jug on the back porch, and a gallon metal gasoline can under the back porch that might be empty. Montgomery found the empty metal can under the back porch.
Mrs. McCostlin told Montgomery that she, her husband, and her son spent the night in the house. Barry left between 5:00 a.m. and 5:30 a.m. on the day of the fire. She and her husband got up at 7:00 a.m. They left the house at approximately 9:00 a.m. to go to the hospital because Mr. McCostlin’s brother was having surgery that day. She called her mother from the hospital at 2:00 p.m., and her mother told her about the fire. Mrs. McCostlin told Montgomery that she did not set fire to the house and that she had no idea who would do so.
Montgomery testified that Mr. McCostlin told him basically the same thing about the appellants’ activities on the day of the fire. Mr. McCostlin also told him that he kept three plastic milk jugs of gasoline in the den. According to Mr. McCostlin, at the time of the fire, two of the jugs were probably full and one was partially full. McCostlin stated that he worked on cars and that he used gasoline to clean carburetor parts. Montgomery did not find any milk jugs in the den. He found a milk jug cap laying on the floor inside the kitchen door. On cross-examination, Montgomery testified that he investigated another fire at the McCostlin home in 1986. He determined that that fire was the result of criminal mischief and that it had not been intentionally set. He testified that at the time *217 of the first fire, Mrs. McCostlin had told him that her ex-husband was threatening to burn the house.
Jerry Burrows, a criminalist with the Alabama Department of Forensic Sciences, testified that an analysis of the plastic milk jugs, the melted plastic container, and the debris collected from around the melted container revealed the presence of an accelerate that was consistent with gasoline.
Ricky Horton of Associates Home Equity Service Mortgage Company, formerly Mellon Financial Services, testified that his company held the mortgage on the McCost-lin house. Between September and December 1988, the McCostlins were past due on their note and were two payments in arrears. A past due notice was addressed to Mrs. McCostlin and was sent to the appellants’ address. Horton also made several calls to the appellants’ residence, but their telephone had been disconnected. He also called their attorney. A foreclosure deed admitted into evidence indicated that the McCostlin house was sold at a foreclosure sale at 2:50 p.m. on December 29, 1988.
Robert Bell, an insurance adjustor for Allstate, testified that the appellants reported a claim for fire damage in late December 1988. The structure was insured for $48,000 and the contents were insured for $24,000. The appellants filed a proof of loss of $54,579, on which partial payment was made. After Bell’s testimony, the State rested its case.
Mrs. McCostlin testified that she woke up at 7:00 a.m. She left the house to go to the hospital to see her brother-in-law at 9:00 a.m. There were no milk jugs tied to any doorknobs with neckties when she left. There was gasoline stored in the den. She received the letter concerning the past due payments and wrote to the mortgage company stating that a payment would be made at the end of December. She had no contact from the insurance company after mailing the letter. She testified that she was never told that the property was being foreclosed. She stated that among the items missing from her house after the fire were a nine-inch television from her son’s room, a cassette tape of her ex-husband threatening to kill her, and court papers involving her ex-husband. She further testified that her ex-husband had tried to set the house on fire on three prior occasions. She stated that neither she nor her husband set fire to the house.
Mrs. McCostlin testified that the Masonic ring that was missing had belonged to her grandfather and that the Eastern Star ring had belonged to her grandmother. The necklace and the earrings taken from the house had been given to her by her husband. She testified that everything of value missing from the house, except the cash, had sentimental value. Mrs. McCostlin’s son, Barry, and her daughter, Kerri Russell, and Cleve McCostlin, Jr., testified that a neighbor’s son had set the fire at the McCostlin house in 1986. He was 11 years old at the time of that fire.
I
Cleve McCostlin first contends that his conviction is due to be reversed and that he is entitled to a new trial because he was denied effective assistance of counsel. Specifically, he argues that his counsel could not effectively represent him at trial because he had a conflict of interest. The appellants were represented by the same attorney at trial. The record reveals that on November 15, 1990, the trial court appointed Cleve McCostlin’s current attorney to represent him because McCostlin had no income or assets. The appellant filed a motion for new trial on December 12, 1990. The appellant failed to raise the issue of ineffective assistance of counsel or conflict of interest in that motion.
We first note that the trial court was not required to initiate an inquiry into the propriety of the multiple representation because counsel never raised this issue at the trial court level. Thornton v. State, 513 So.2d 83 (Ala.Crim.App.1987). Furthermore, nothing in the circumstances of this case indicates that the trial court had a duty to inquire whether there was a conflict of interest. Id. The record does not indicate an apparent conflict of interest.
*218 In Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Court set out the standard of review for conflict of interest claims where the appellant did not make a timely objection. “In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer’s performance.” Cuyler, 446 U.S. at 350, 100 S.Ct. at 1719, 64 L.Ed.2d at 348. The possibility of a conflict is not sufficient to impugn a criminal conviction. Id. An appellant “must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of actions, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other.” Schultz v. State, 481 So.2d 456, 459 (Ala.Crim.App.1985) (quoting Baty v. Balkcom, 661 F.2d 391, 395 (5th Cir.1981), cert. denied, 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982)); Barham v. United States, 724 F.2d 1529 (11th Cir.), cert. denied, 467 U.S. 1230, 104 S.Ct. 2687, 81 L.Ed.2d 882 (1984).
Nothing in the record indicates an actual conflict of interest. Mrs. McCostlin’s testimony concerning the fire was actually exculpatory. See United States v. Alvarez, 696 F.2d 1307 (11th Cir.1983), cert. denied, 461 U.S. 907, 103 S.Ct. 1878, 76 L.Ed.2d 809 (1983). She testified that her husband did not set the fire. Mr. McCostlin argues incorrectly that Mrs. McCostlin’s hearsay statement to Richard Montgomery was the only evidence putting him at the scene of the fire on the day of the fire. The record reveals, however, that Montgomery testified that Mr. McCostlin gave him the same version of the appellants’ activities on the day of the fire. We also note that the evidence of motive was admissible as to both appellants and could have been properly admitted at the trial of either appellant had they been tried separately. Furthermore, the appellants’ counsel did object to the admission of the past due notice, and it is clear from the record that the trial court considered whether the evidence was admissible to show the motive of both appellants. The notice was later admitted into evidence after an off-the-record discussion.
II
Both appellants contend that the evidence is insufficient to sustain their convictions. We disagree.
“A person commits the crime of arson in the second degree if he intentionally damages a building by starting or maintaining a fire or causing an explosion.” Ala.Code § 13A-7-42(a) (1975). In order to establish the corpus delicti of arson, burning by natural or accidental causes must also be satisfactorily excluded. C.L.M., Jr. v. State, 531 So.2d 699 (Ala.Crim.App.1988). The corpus delicti of the offense of arson may be established by inference, see Bolden v. State, 568 So.2d 841 (Ala.Crim.App.1989), and by circumstantial evidence. Bolden; Smiley v. State, 376 So.2d 813 (Ala.Crim.App.1979). When reviewing a trial court’s action in denying a motion to exclude, the standard for review is whether there was legal evidence before the jury at the time the motion was made “from which the jury could by fair inference find the defendant guilty.” Benton v. State, 536 So.2d 162, 165 (Ala.Crim.App.1988); Kent v. State, 367 So.2d 508, 517 (Ala.Crim.App.1978), cert. denied, 367 So.2d 518 (Ala.1979).
“In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilty, but whether a jury might reasonably so conclude.
[[Image here]]
“Guilt is not established by circumstantial evidence unless the facts relied on are such that it is the only conclusion fairly to be drawn from them. If all of the material circumstances in evidence point to guilt and exclude any reasonable hypothesis except that of guilt a conviction is warranted.
*219 “However, ‘it is not every hypothesis, but every reasonable hypothesis but that of guilt, that the circumstantial evidence must exclude.’ ”
C.L.M., Jr. v. State at 703-04 (quoting Cumbo v. State, 368 So.2d 871, 874-75 (Ala.Crim.App.1978), cert. denied, 368 So.2d 877 (Ala.1979) (citations omitted, emphasis supplied)).
The evidence presented by the State in support of its case has been previously set out in this opinion and will not be repeated here. We have carefully considered the evidence as it applies to each appellant and conclude that the evidence was sufficient to support their convictions. See Ex parte Davis, 548 So.2d 1041 (Ala.1989); Galloway v. State, 416 So.2d 1103 (Ala.Crim.App.1982). The trial court properly denied the appellants’ motions for judgment of acquittal at the conclusion of the State’s evidence and at the conclusion of the trial.
For the reasons set forth above, this case is due to be, and it hereby is, affirmed.
AFFIRMED.
All the Judges concur.

. The front door had been kicked open by Terry Beckham.