James Meads sued RPM Pizza, Inc., d/b/a Domino's Pizza ("Domino's"), for damages, alleging that he incurred personal injury and property damage when his truck was struck from the rear by a Domino's delivery van. The van was driven by Marsha Burgess, a Domino's employee. It is without dispute that Burgess was acting within the scope of her employment when the accident occurred and that the collision was the result of her negligence. The case was tried to a jury, which returned a verdict for Domino's, apparently finding that Meads had suffered no compensable personal injury or property damage as a result of the accident.
On appeal, Meads argues that counsel for Domino's violated the principles of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), when he struck the only four African-Americans on the venire, and that the jury's verdict was erroneous and contrary to the great weight of the evidence. We disagree with both contentions.
Meads, who is white, has standing to challenge Domino's use of its peremptory challenges to eliminate African-Americans in a civil action. K.S. v. Carr, 618 So.2d 707 (Ala. 1993); Thomasv. Diversified Contractors, Inc., 551 So.2d 343 (Ala. 1989);Edmonson v. Leesville Concrete Co., 500 U.S. 614,111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); Powers v. Ohio, 499 U.S. 400,111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Meads made a proper and timely Batson objection, and the trial court required Domino's to state legitimate race-neutral reasons for its strikes.
Two of the potential jurors were struck because their husbands had sued to recover damages for back injuries. Meads sought to recover damages for a back injury he claimed to have incurred as a result of the collision. Another potential juror stated that one of Meads's lawyers had been his student. Meads really does not challenge these three strikes. The peremptory challenge he finds objectionable was made to a woman who worked as a nanny. When counsel for Domino's was asked for its reasons for striking her, the following exchange took place:
 "[Attorney for Domino's]: Number 76 is a nanny. And nannies take care of people. They are sympathetic to people who are hurt and complain about being hurt. And I thought she would not be the kind of juror that I would want on this case.
". . . .
 "[Attorney for Meads]: I accept [the] explanations for [the others]. But . . ., the nanny, I don't think there's any, I mean it has to be more than a mere suspicion or inkling. Obviously, the woman is black. *Page 1354 
And whether or not she's a nanny, I never heard that nannies give away money.
". . . .
 "THE COURT: I accept [the] reasons as being nonracial in nature and I will allow the jury to be empaneled."
Meads argues only that basing a strike on an occupation, specifically the occupation of nanny, was a sham or pretext.
We have previously held that when a trial court requires a party to state his reasons for peremptorily striking a juror and that party does state a reason or reasons, the trial court's determination as to the legitimacy of the reason or reasons will be set aside only if that determination is clearly erroneous. Ex parte Branch, 526 So.2d 609 (Ala. 1987); see, also, United States v. Mathews, 803 F.2d 325 (7th Cir. 1986), rev'd on other grounds, 485 U.S. 58, 108 S.Ct. 883,99 L.Ed.2d 54 (1988).
After reviewing the record, we conclude that the trial court's denial of Meads's Batson motion was not clearly erroneous. The fact that a peremptory strike was based on a potential juror's occupation does not automatically create a suspicion of racial bias. Although our research has disclosed no previous Alabama cases dealing with exclusion of nannies per se, our recent case of K.S. v. Carr, supra, did discuss a peremptory challenge used to strike a veniremember on the basis that she was a nurse:
 "Lifeline and Carr's counsel stated that they struck black veniremember B. F. because she had no children and was a nurse at Cooper Green Hospital. The record shows, however, that B. F. stated that she had three children. Moreover, while B. F. was in the health care profession, she was not a nurse. Rather, she was a darkroom technician."
K.S. v. Carr, supra, at 710.
We found the challenge in Carr to be racially motivated, because the asserted race-neutral reasons proved false upon even the most superficial investigation. If, however, the asserted reasons had been true, the trial judge could reasonably have found them to be acceptable, race-neutral, clear, and reasonably specific reasons for exercising the challenge. See, Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
 "There are many possible reasonable explanations for such strikes. Batson demands that such strikes be related to the case to be tried and not be related to the defendant's and the jurors' shared race. . . . [I]t is clear that the explanation need not rise to the level of a challenge for cause. However, a clear, reasonable explanation for the strike must be given."
Harrell v. State, 555 So.2d 263, n. 1 (Ala. 1989) (citations omitted).
If Meads had proved that a white nanny or another white veniremember employed in a "caring" or "healing" occupation had been empaneled as a juror, there would be evidence that the reason or explanation given by Domino's was a sham or a pretext for discrimination. Such disparate treatment of otherwise similarly situated persons, who happen to be of different racial backgrounds, would be evidence that the asserted race-neutral reason was a sham or a pretext. See, Ex parteBranch, 526 So.2d 609, 623-24 (Ala. 1987). The record contains no evidence that such a white veniremember sat on the jury. Based upon the undisputed merit in peremptorily striking three of the four African-American jurors, the trial court could have reasonably concluded that there was no racial motivation in striking the fourth African-American juror based upon her occupation.
Meads also argues that the trial court should have granted him a new trial, because, he says, the jury's verdict was against the weight of the evidence.
 "[W]here [verdicts] are unchallenged on a sufficiency-of-the-evidence ground, or when the evidence meets the 'sufficiency' test, jury verdicts are presumed correct, and this presumption is strengthened by the trial court's denial of a motion for a new trial. Therefore, a judgment based upon a jury verdict and sustained by the denial of a post-judgment motion for a new trial, will not be reversed on a weight-of-the-evidence ground unless it is 'plainly and palpably' wrong. Ashbee v. Brock, 510 So.2d 214 (Ala. 1987). See, also, Jawad v. Granade, 497 So.2d 471 (Ala. 1986)." *Page 1355 
Alpine Bay Resorts, Inc. v. Wyatt, 539 So.2d 160, 162
(Ala. 1988).
Furthermore, " '[i]t is axiomatic that proof of negligence requires the establishment of a breach of a duty flowing from the defendant to the plaintiff which proximately causes damageto the plaintiff. Sloss-Sheffield Steel Iron Co. v. Allred,247 Ala. 499, 25 So.2d 179 (1945); Williams v. Wicker, 235 Ala. 348,179 So. 250 (1938).' Thompson v. Lee, 439 So.2d 113, 115
(Ala. 1983)." Latham v. Redding, 628 So.2d 490 (Ala. 1993) (emphasis added). Without damage to the plaintiff, caused by the actions of the defendant, there is no cause of action for negligence. "Where, as here, there is a factual dispute as to whether an injury was proximately caused by the acts of the defendant, it is peculiarly within the province of the jury to resolve the conflict." Allen v. Turpin, 533 So.2d 515, 517
(Ala. 1988).
Meads, with his son in the passenger seat, was stopped at a traffic light, behind another vehicle, when Burgess's delivery van skidded into the back of Meads's truck. The impact was not so severe as to cause Meads's truck to strike the car in front of it, nor was Meads's son injured in any way. Meads did not, at the time, complain of pain or discomfort, nor did he request any medical assistance or go to a hospital. Instead, he and his son drove on to go hunting. Later, Meads claimed, he experienced severe pain in his back and in his right knee, and he claims that he visited his chiropractor because of it.
Meads had been seeing this chiropractor for almost 20 years, suffering over those years from the same sort of pain he now complains of. Meads had been involved in two other car accidents and had incurred two slip and fall injuries before this accident occurred, and he had complained of injury to his back in each case. Meads had also previously injured his right knee while playing basketball. There was evidence from which the jury could have concluded that Meads's physical problems were not the result of the accident, but were rather the result of these previous occurrences.
The jury clearly disbelieved the testimony of Meads and his witnesses to the effect that it was this accident, and not the previous ones, that had injured Meads's back and knee. The jury's verdict was reasonable and was based on the evidence before it.
AFFIRMED.
HORNSBY, C.J., and KENNEDY and COOK, JJ., concur.
ALMON, J., concurs in the result.