Clarence Macon, the appellant, was convicted of the unlawful distribution of cocaine and was sentenced to life imprisonment as a habitual felony offender. He raises four issues on this direct appeal from that conviction.
 I
The appellant claims that the prosecution did not give a race-neutral reason, as required by Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), for the striking of veniremember Deborah Arnold. The prosecutor's stated reason for striking Ms. Arnold was:
 "[S]he returned a not . . . guilty on a DUI as did white jurors, white venire members number 22 and 24. I am familiar with that case and it was a case in which they found the defendant to be drunk but yet just wanted to hear more testimony from paramedics. That to me shows a propensity to second guess the evidence and even to find a not guilty — . . . on a probability of doubt —." R. 12-13.
The fact that a veniremember served on a jury that returned a not guilty verdict or that was unable to return a verdict has been held to be an acceptable reason for striking that veniremember. E.g., Childers v. State, 607 So.2d 350, 352
(Ala.Cr.App. 1992) (veniremember previously served on jury that returned a not guilty verdict); Powell v. State, 608 So.2d 411,413 (Ala.Cr.App. 1992) (veniremember previously served on a jury that was unable to reach a verdict); Whittlesey v. State,586 So.2d 31, 32 (Ala.Cr.App. 1991) (three veniremembers had previously served on juries that returned not guilty verdicts or that were unable to reach a verdict); Watkins v. State,551 So.2d 421, 422-23 (Ala.Cr.App. 1988) (one veniremember previously served on a jury that returned a not guilty verdict; another veniremember had previously served on two juries — one criminal, one civil — both of which were unable to return a verdict).
The prosecutor did not strike Leo Deason, # 65, who was white and who "was on that same jury" with Deborah Arnold. R. 14. The prosecutor justified this apparent discrepancy: "[F]rom his demeanor and also the fact that he is a member of the Homewood Fire Department, his occupation showed me that he could be fair and impartial and I think it is favorable to the State." R. 15. Disparate treatment of venire-members — the fact that persons with the same or similar characteristics as the challenged *Page 333 
juror were not struck — is a strong indication that the challenged party has engaged in discriminatory conduct. See Exparte Bird, 594 So.2d 676, 681 (Ala. 1991); Ex parte Branch,526 So.2d 609, 624 (Ala. 1987).
In ruling on the appellant's objection, the trial judge stated: "I am not so concerned about [Deborah Arnold], the lady that was on a jury this week, because of their commonalities among your strikes, 22 and 24, white people on the same jury and that special disclosure made by some of the jurors apparently that they found intoxication and yet wanted more testimony." R. 18.
"The trial judge's determination in each case that peremptory challenges were not racially motivated is, ordinarily, entitled to considerable deference." Bui v. State, 627 So.2d 855, 860
(Ala. 1992) (Adams, J., concurring specially), cert. denied, ___ U.S. ___, 113 S.Ct. 2970, 125 L.Ed.2d 669 (1993). "It is well settled that the ruling of the trial court on a Batson hearing is entitled to substantial deference and will not be disturbed on review unless it is 'clearly erroneous.' Scales v. State,539 So.2d 1074 (Ala. 1988)." Ex parte Bankhead, 625 So.2d 1146,1148 (Ala. 1993). See also Meads v. RPM Pizza, Inc.,639 So.2d 1352 (Ala. 1994).
Furthermore, we do not see how the appellant was prejudiced in this particular case. Almost immediately after the trial judge made the statement quoted above, he was informed that Ms. Arnold had received a telephone call from her mother informing her that her father was seriously ill. R. 20. The trial judge then excused Ms. Arnold from jury service and did not give the prosecutor another strike.
We recognize that "a single instance of purposeful racial discrimination in the use of peremptory strikes does violateBatson," Ex parte Carter, 627 So.2d 1030, 1032 (Ala. 1993), and that "[o]rdinarily, a Batson violation cannot be considered harmless error." K.S. v. Carr, 618 So.2d 707, 711 (Ala. 1993). However, under the particular circumstances present in this case, we find any Batson error harmless in connection with the striking of Ms. Arnold.
 II
This Court has held that J.E.B. v. Alabama, ___ U.S. ___, ___, 114 S.Ct. 1419, 1430, 128 L.Ed.2d 89 (1994), holding that the Equal Protection Clause prohibits discrimination in jury selection on the basis of gender, applies retroactively to all cases that were pending on direct appeal and that were not "final" when J.E.B. was decided. Allen v. State, [Ms. CR 92-1463, May 27, 1994] ___ So.2d ___ (Ala.Cr.App. 1994). However, gender was not a ground of the appellant's objections to the prosecutor's use of his peremptory strikes of the jury venire. In all but capital cases, even Batson objections must be properly preserved by appropriate and timely objection before an appellate court will review the action. Ross v.State, 581 So.2d 495, 497 (Ala. 1991).
 III
The appellant's contention that the evidence is insufficient to support his conviction is without merit. The State proved that on March 19, 1993, the appellant sold Birmingham Police Officer Eric Bennison two "rocks" of crack cocaine. The appellant argues that Bennison's identification of him was suspect because of "his interest in the case (arresting officer), his angle of view (seated, looking up outside the car at a standing individual), and his obvious emphasis on the apparel of Appellant." Appellant's brief at 17.
The accuracy of Bennison's positive identification of the appellant was a question for the jury. "It is part of the fact finding function of the jury to decide the issue of identity."Agee v. State, 429 So.2d 654, 655 (Ala.Cr.App. 1982). "The question of identification was entirely a question of fact for the jury, and the evidence presented was sufficient to sustain their conclusion." Dozier v. State, 415 So.2d 3, 5
(Ala.Cr.App. 1982). The quality of a witness's identification of the defendant goes "to the weight and credibility of the [witness's] identification rather than its admissibility."Johnson v. State, 453 So.2d 1323, 1328 (Ala.Cr.App. 1984).
The appellant also argues that certain inconsistencies and discrepancies in the evidence *Page 334 
presented by the State were sufficient to generate a reasonable doubt as to the appellant's guilt. Providing the State presents a prima facie case, any inconsistencies and discrepancies in the evidence go to the credibility of the witnesses and present a question for the jury. Currin v. State, 535 So.2d 221, 222
(Ala.Cr.App.), cert. denied, 535 So.2d 225 (Ala. 1988). Such inconsistencies affect the weight rather than the sufficiency of the evidence. See Johnson v. State, 555 So.2d 818, 819-20
(Ala.Cr.App. 1989).
 IV
The appellant contends that the State failed to establish a proper predicate of authenticity for the admission of a videotaped recording of the drug transaction. At trial, the appellant objected and stated as a ground "lack of proper foundation." R. 47.
Officer Bennison, the undercover agent who purchased the cocaine from the appellant, testified that the videotape "truly and accurately depict[ed] the happenings on the occasion that [he was] here to tell [the jury] about." R. 50. See also R. 46-47. The fact that the video camera was located approximately one block from the point of the sale and from Bennison's location went to the credibility of Bennison's verification of the accuracy of the video and presented a question for the jury. Bennison, as an eyewitness to the sale, was able to authenticate the videotape under the " 'pictorial communication' theory" set out in Ex parte Fuller,620 So.2d 675, 678 (Ala. 1993).
We hold that the videotape was authenticated and therefore properly admitted into evidence.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.