Opinion by Judge TAUBMAN.
¶ 1 Defendant, Derrick Demetrus Wilson, appeals the judgment of conviction entered on jury verdicts finding him guilty of sexual assault with a deadly weapon, unlawful sexual contact with force or violence, and second degree kidnapping of a victim of sexual assault. He also appeals the sentence imposed after the trial court convicted him of three habitual counts. We reverse and remand the case for further proceedings.
I. Background
¶ 2 The prosecution's evidence established that on May 17, 2003, Wilson attacked the victim on a secluded street, dragged her to some nearby trees, sexually assaulted her after putting a gun to her head, and then escaped in his vehicle. DNA evidence collected from the victim's rape examination yielded a positive match to Wilson in 2008. Expert testimony presented at trial established a probability of one in fifteen trillion that the DNA belonged to someone other than, or unrelated to, Wilson. At trial, Wilson argued that the DNA evidence was not conclusive, and that someone else was the assailant.
II. Batson Challenge
¶ 3 Wilson contends the trial court clearly erred in overruling his Batson challenge to the prosecutor's peremptory strike against Mr. E, an African-American potential juror. We agree.
A. Standard of Review
¶ 4 In People v. Cerrone, 854 P.2d 178 (Colo.1993), Colorado implemented the three-step analysis, created by the Supreme Court in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to evaluate claims of purposeful discrimination during jury selection. Under this test, (1) a defendant must establish a prima facie case of discrimination; (2) the prosecution then must give a race-neutral explanation for its peremptory strike; and (3) the court must decide whether the defendant has proven discrimination by a preponderance of the evidence.
*14 People v. Collins, 187 P.3d 1178, 1182 (Colo.App.2008). "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).
¶ 5 Here, the parties acknowledge the first and second steps of the Batson analysis were satisfied. However, Wilson challenges the trial court's finding under the third step that he failed to prove racial discrimination in the prosecution's peremptory strike of Mr. E. Because the trial court is in the best position to consider the credibility of the prosecution's explanations, we afford great deference to its determination. Miller-El v. Cockrell, 537 U.S. 322, 339-40, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (Miller-El I ). However, "deference does not imply abandonment or abdication of judicial review," and the trial court's ruling may be overturned when unreasonable or premised on incorrect facts. Id. at 340, 123 S.Ct. 1029 ; People v. Robinson, 187 P.3d 1166, 1173-74 (Colo.App.2008). Thus, we review for clear error the trial court's factual determination regarding whether the defendant proved discrimination. Snyder v. Louisiana, 552 U.S. 472, 477, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008) ; Valdez v. People, 966 P.2d 587, 590 (Colo.1998).
B. Batson Violation
¶ 6 A defendant has "the right to be tried by a jury whose members are selected by nondiscriminatory criteria." Powers v. Ohio, 499 U.S. 400, 404, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Thus, the use of a peremptory challenge to purposefully discriminate against a juror of a protected class is a violation of the prospective juror's right of equal protection under the Fourteenth Amendment of the United States Constitution. Collins, 187 P.3d at 1181 (citing J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 146, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) ). "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." Batson, 476 U.S. at 86, 106 S.Ct. 1712.
¶ 7 In selecting a jury, the prosecutor may not act with "discriminatory purpose" when exercising peremptory challenges. Collins, 187 P.3d at 1181. " 'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Hernandez v. New York, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion) (quoting Personnel Adm'r v. Feeney, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) ).
¶ 8 Here, during voir dire, the following colloquy took place between the prosecution and the prospective juror, Mr. E:
PROSECUTOR: Mr. [E], ... [d]o you have confidence in scientific evidence?
PROSPECTIVE JUROR: Yes, I do.
PROSECUTOR: And would it cause you any pause that the witness may not be able to identify her attacker?
PROSPECTIVE JUROR: That would.
PROSECUTOR: Okay. Let's talk about that a little bit. Do you think there are crimes that are committed when nobody is around?
PROSPECTIVE JUROR: Yes.
PROSECUTOR: Okay. And let's say, for example, somebody broke into your house, you weren't there, so you became the victim of a burglary. But you weren't there, so you don't know who it was.
PROSPECTIVE JUROR: Okay.
PROSECUTOR: If that person left a fingerprint or some DNA evidence behind, would you be comfortable in prosecuting that case?
PROSPECTIVE JUROR: I think I would in that case, yes.
PROSECUTOR: Let's assume that in this case, the surprise-it's dark, and people don't get a good enough look at the attacker to make positive identification. Does ... any of that in and of itself make you think that we can't prove these charges?
PROSPECTIVE JUROR: Not in and of itself, no.
*15 PROSECUTOR: Okay. If we can prove to you beyond a reasonable doubt identification via scientific evidence, not through eyewitness testimony, and you, of course, have to weigh the value of our evidence, but if we can do that, would you be comfortable in returning a verdict of guilty?
PROSPECTIVE JUROR: I believe so.
¶ 9 Following voir dire, the prosecutor used her first and only challenge to strike Mr. E. Wilson raised a Batson challenge in response. The prosecutor gave the following reasons to support her strike:
Your Honor, the People would indicate, first of all, that Mr. [E]-we do believe we have reasonable reason for excusing him. The biggest concern was that he was very uncomfortable with the lack of eyewitness identification. That he was not sure about the science of DNA, and if the victim could not identify someone, it would not-the DNA in and of itself is not enough.
I think I've already said this, but it was his discomfort with the DNA evidence and his concern about the ability to return a verdict of guilty if, in fact, the victim could not do an eyewitness identification in the case.
¶ 10 Wilson's counsel responded: "Judge, I believe he said the exact opposite. My notes indicate that he indicated that he was comfortable with DNA, and that he would have no problem with the alleged victim not being able to identify the-."
¶ 11 After not allowing Wilson's counsel to respond further, the trial court denied the challenge:
Well, you know, in terms of the DNA, he kind of waffled back and forth. But what I heard specifically on the ID issue is that there was a general question where all the jurors said, Yeah, cases get decided every day, burglary, for example, and [the prosecutor] used this with a different juror particularly; I can't remember this juror. He hesitated for an extended period, and when responding to the question about the ID and the inability of the complaining witness to make an ID of the suspect here, he indicated some concern or question about it.
The Court is satisfied that the prosecution has stated an appropriate basis to excuse Mr. [E] on that basis.
¶ 12 Wilson challenges the trial court's crediting the prosecutor's race-neutral reasons for excusing Mr. E. Thus, our analysis rests on the third step of the Batson analysis.
¶ 13 The third step in Batson requires the trial court to determine whether the defendant "has established purposeful discrimination." Batson, 476 U.S. at 98, 106 S.Ct. 1712. "The court must review all the evidence to decide whether the opponent of the strike has shown, by a preponderance of evidence, that the proponent of the strike sought to exclude a potential juror because of a discriminatory reason." Collins, 187 P.3d at 1182 (citing Craig v. Carlson, 161 P.3d 648, 654 (Colo.2007) ). In such a determination, the decisive question is whether the prosecutor's race-neutral explanation for the challenge should be believed. Id.; see Miller-El I, 537 U.S. at 339, 123 S.Ct. 1029. "[T]he plausibility of the prosecutor's race-neutral explanation becomes relevant, such that incredible explanations 'may (and probably will) be found to be pretexts for purposeful discrimination.' " People v. Gabler, 958 P.2d 505, 507 (Colo.App.1997) (quoting Purkett, 514 U.S. at 768, 115 S.Ct. 1769 ).
¶ 14 To determine whether the prosecutor's explanation is credible, courts consider, among other things, how reasonable or how improbable the explanation is, whether the explanation has some basis in accepted trial strategy, and the prosecutor's demeanor. Miller-El I, 537 U.S. at 339, 123 S.Ct. 1029. The prosecutor's credibility is called into question where his or her explanation rests on a reason that could be equally applied to remaining jurors not of the protected class. See id. at 343, 123 S.Ct. 1029 (reversing for Batson violation where the "State's proffered race-neutral rationales for striking African-American jurors pertained just as well to some white jurors who were not challenged and who did serve on the jury"); Collins, 187 P.3d at 1183 ; Gabler, 958 P.2d at 508. Such circumstances may suggest pretext sufficient for finding a Batson *16 violation. Miller-El v. Dretke, 545 U.S. 231, 241, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) (Miller-El II ); Collins, 187 P.3d at 1183.
¶ 15 Here, the prosecutor gave two facially race-neutral explanations for striking Mr. E: (1) his "discomfort with the DNA evidence," and (2) "his concern about the ability to return a verdict of guilty if, in fact, the victim could not do an eyewitness identification in this case." However, both explanations are refuted by the record, and therefore suggest pretext sufficient for finding discriminatory purpose. See People v. O'Shaughnessy, 275 P.3d 687, 693 (Colo.App.2010), aff'd, 2012 CO 9, 269 P.3d 1233 ; Collins, 187 P.3d at 1183-84.
¶ 16 The prosecutor's first explanation, that Mr. E was uncomfortable with DNA evidence, is clearly not supported by the record. When the prosecutor asked whether he had confidence in scientific evidence, Mr. E responded, "Yes, I do." Similarly, when asked whether he would be comfortable prosecuting a case based on fingerprint or DNA evidence, he responded, "I think I would in that case, yes." Nowhere else in the record was scientific evidence discussed with Mr. E. Accordingly, the prosecutor's first explanation is not supported by the record, and the trial court clearly erred by relying on it.
¶ 17 The prosecutor's second explanation, that Mr. E. was uncomfortable with the lack of eyewitness identification, is similarly refuted by the record. Mr. E neutralized any doubt about a lack of eyewitness identification when he stated that he would feel comfortable convicting a suspect on scientific evidence alone. This situation is similar to Gabler, in which the prosecutor stated that he struck a juror because he watched Court TV and therefore might hold the prosecution to a higher standard. 958 P.2d at 508. A division of this court, however, found this explanation incredible because the juror specifically stated that he could remain impartial despite his TV viewing preferences. Id.
¶ 18 The record indicates the trial court accepted the prosecutor's explanations as true without determining whether they were consistent with Mr. E's voir dire. Accordingly, we conclude that because the prosecutor's race-neutral explanations were inconsistent with the record, the record necessarily establishes that those explanations were pretextual and were actually based on Mr. E's race.
¶ 19 We recognize the trial court noted that Mr. E "hesitated for an extended period" when responding to some questions, and normally, such a finding should be afforded deference. See Miller-El I, 537 U.S. at 339, 123 S.Ct. 1029 ; Robinson, 187 P.3d at 1173. However, the trial court's unsupported finding that "in terms of the DNA, [Mr. E] waffled back and forth" and the otherwise pretextual nature of the prosecutor's proffered explanations constitute "exceptional circumstances" that outweigh the deference we would ordinarily give to the trial court's finding on this point. Robinson, 187 P.3d at 1174.
C. Remedy for Batson Error
¶ 20 Having concluded that the striking of Mr. E violated Wilson's constitutional rights, we now turn to the issue of remedy-whether Batson violations are subject to harmless error analysis.
¶ 21 Colorado courts have not addressed the appropriate remedy for Batson violations. Where Colorado courts have found Batson violations, they have consistently reversed without addressing the issue of remedy. See, e.g., Collins, 187 P.3d at 1184 ; Gabler, 958 P.2d at 509.
¶ 22 However, the overwhelming majority of courts in other jurisdictions to consider the issue have held that a Batson violation constitutes structural error requiring automatic reversal. See, e.g., Winston v. Boatwright, 649 F.3d 618, 632 (7th Cir.2011) ; United States v. Kimbrel, 532 F.3d 461, 469 (6th Cir.2008) ; Williams v. Woodford, 396 F.3d 1059, 1069-70 (9th Cir.2005) ; Tankleff v. Senkowski, 135 F.3d 235, 240 (2d Cir.1998) ; Robinson v. United States, 890 A.2d 674, 679-80 (D.C.2006) ; State v. Lowe, 267 Neb. 782, 677 N.W.2d 178, 186-88 (2004), abrogated on other grounds by State v. Thorpe, 280 Neb. 11, 783 N.W.2d 749 (2010) ; Bausley v. State, 997 S.W.2d 313, 319 (Tex.Ct.App.1999) ; but see *17 Macon v. State, 652 So.2d 331, 333 (Ala.Crim.App.1994) (finding Batson error harmless where excused juror would have been excused in any event to tend to ill relative, but recognizing that ordinarily harmless error does not apply to Batson violations). We are persuaded by the reasoning of these cases, and therefore hold that the Batson violation here is structural error requiring automatic reversal.[1]
¶ 23 The Colorado Supreme Court has divided constitutional errors that occur during a criminal proceeding into two categories-trial error and structural error. See Hodges v. People, 158 P.3d 922, 927 (Colo.2007). Trial errors are "errors in the trial process itself," which do not require automatic reversal, but rather may be assessed under either harmless or plain error analysis. People v. Miller, 113 P.3d 743, 749 (Colo.2005) (quoting Neder v. United States, 527 U.S. 1, 8-9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) ). Structural errors, however, are such errors that affect "the framework within which the trial proceeds," and therefore require automatic reversal. Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) ; accord Miller, 113 P.3d at 749. The Supreme Court has found the following errors to be structural: complete denial of counsel, a biased trial judge, racial discrimination in the selection of the grand jury, denial of self-representation at trial, denial of a public trial, and defective reasonable doubt instructions. Neder, 527 U.S. at 8, 119 S.Ct. 1827 (collecting cases); see People v. Munsey, 232 P.3d 113, 118 (Colo.App.2009).
¶ 24 Although the Supreme Court has not held that Batson violations are structural errors, it has held that "discrimination on the basis of race in the selection of grand jurors 'strikes at the fundamental values of our judicial system and our society as a whole,' " and therefore constitutes structural error. Vasquez v. Hillery, 474 U.S. 254, 262, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (quoting Rose v. Mitchell, 443 U.S. 545, 556, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979) ). Further, in Batson, the Court noted that "[t]he basic principles prohibiting exclusion of persons from participation in jury service on account of their race 'are essentially the same for grand juries and for petit juries,' " thus suggesting structural error should apply to Batson violations involving petit juries. Batson, 476 U.S. at 84 n. 3, 106 S.Ct. 1712 (quoting Alexander v. Louisiana, 405 U.S. 625, 626 n. 3, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972) ).
¶ 25 Further, Batson violations clearly fall within the category of structural errors that affect "the framework within which the trial proceeds," Fulminante, 499 U.S. at 310, 111 S.Ct. 1246, and for which the consequences are "unquantifiable and indeterminate," Sullivan v. Louisiana, 508 U.S. 275, 282, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). This is because a Batson violation infects the entire trial process through an "overt wrong, often apparent to the entire jury panel, [which] casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial of the cause." Ford v. Norris, 67 F.3d 162, 171 (8th Cir.1995) ; see also Amy Knight Burns, Note, Insurmountable Obstacles: Structural Errors, Procedural Default, and Ineffective Assistance, 64 Stan. L.Rev. 727, 742 (2012) (discriminatory jury selection harms the accused, the administration of justice, and society as a whole).
¶ 26 Further, the United States Supreme Court's discussion of the erroneous loss of peremptory challenges demonstrates that the Batson issue is distinguishable. See Rivera v. Illinois, 556 U.S. 148, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009). In Rivera, the Supreme Court held that the erroneous denial of a defendant's peremptory challenge does not require automatic reversal under federal law. Id. at 152, 129 S.Ct. 1446. The Court concluded there is no constitutional right to peremptory challenges, and therefore states may withhold them altogether without implicating constitutional guarantees. Id. at 152, 157, 129 S.Ct. 1446. However, the Court distinguished its holding from cases "involv[ing] constitutional errors concerning the qualification of the jury or judge," including *18 Batson violations. Id. at 161, 129 S.Ct. 1446 (emphasis in original).
¶ 27 Thus, because Batson implicates federal constitutional rights related to the "fundamental elements of fairness in a criminal trial," rather than statutory guarantees, cases such as Rivera are distinguishable. Id. at 158, 129 S.Ct. 1446 (quoting Spencer v. Texas, 385 U.S. 554, 563-64, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) ).
¶ 28 Accordingly, we conclude that the Batson violation here constitutes a structural error requiring automatic reversal.[2] Therefore, we reverse and remand the case for a new trial.
¶ 29 In the interest of judicial economy, we address those of Wilson's remaining contentions that are likely to recur on remand.
III. Miranda Violation
¶ 30 Wilson contends that the trial court erred in admitting statements he made to law enforcement officials, without being advised of his Miranda rights, which evidenced his connection with Colorado, despite his contentions of never having been in the state. We disagree.
A. Standard of Review
¶ 31 Whether a person has been subjected to custodial interrogation for the purposes of Miranda is a mixed question of law and fact that we review de novo. People v. Matheny, 46 P.3d 453, 462 (Colo.2002).
B. Analysis
¶ 32 The Fifth and Fourteenth Amendments to the United States Constitution guarantee an arrestee's privilege against self-incrimination and the right to have counsel present during custodial interrogation. See Miranda v. Arizona, 384 U.S. 436, 442-44, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ; see also Colo. Const. art. II, § 18. A defendant who is in custody must be advised of his or her constitutional rights before being interrogated. Miranda, 384 U.S. at 444, 86 S.Ct. 1602 ; People v. Klinck, 259 P.3d 489, 493 (Colo.2011). However, Miranda only applies if the person making the statements is in custody and the statements are the product of police interrogation. People v. Breidenbach, 875 P.2d 879, 885 (Colo.1994).
¶ 33 Here, the parties agree that when Wilson made the statements, he was in custody and had not been advised of his Miranda rights. Accordingly, the only issue is whether the officer's questions amounted to interrogation.
¶ 34 In determining whether a defendant has been subjected to interrogation, a court considers the totality of circumstances surrounding the encounter, focusing its inquiry on whether the interrogator reasonably should have known that his or her words or actions would cause the suspect to perceive that he or she was being interrogated. See People v. Rivas, 13 P.3d 315, 319 (Colo.2000) ; People v. Gonzales, 987 P.2d 239, 241 (Colo.1999).
¶ 35 Interrogation has been interpreted broadly to mean any words or actions by the police that are likely to elicit an incriminating response. Rivas, 13 P.3d at 319. However, interrogation does not include questions normally attendant to arrest and custody, such as the suspect's name and address. People v. Blankenship, 30 P.3d 698, 704 (Colo.App.2000) ; see also United States v. Satterfield, 743 F.2d 827, 849 (11th Cir.1984) ( Miranda does not apply to incriminating statements made during "small talk" or "casual conversation" with police transporting defendant).
¶ 36 Here, Wilson argues the trial court erred in not suppressing statements he made to a sheriff who was transporting him from California to Colorado following his arrest. During the trip, the officer asked Wilson whether anybody knew that he was going to Colorado, to which Wilson responded that his wife knew. The officer then asked whether she would accept collect calls, to which Wilson replied, no, but said he was going to call his uncle who lived in Denver. The officer *19 explained during the suppression hearing that he had asked these questions as "small talk" to assess whether Wilson would cooperate.
¶ 37 The trial court concluded that the questions asked by the officer were attendant to his custody of Wilson, and therefore did not constitute interrogation. In making this conclusion, the trial court noted that the officer used the questions to determine how Wilson would act, and to calm Wilson so he would cooperate-actions related to his custody of Wilson. The court further found that the officer did not have reason to know that his question would elicit an incriminating response. Specifically, the court noted that the officer was not investigating Wilson's case, but was instead merely a "transport officer." Thus, he could not have reasonably expected such questions would elicit incriminating evidence related to Wilson's sexual assault case.
¶ 38 We conclude that the trial court's determination that the officer's questioning of Wilson did not amount to interrogation is well supported by its factual findings, which in turn are supported by the record. Accordingly, the trial court did not err in admitting the statements, and Miranda does not apply.
IV. Saliva Sample
¶ 39 Wilson contends that saliva samples taken from him, by court order pursuant to Crim. P. 16(II)(a)(1) and 41.1, were unconstitutionally seized. We disagree.
A. Standard of Review
¶ 40 In reviewing a motion to suppress, we defer to the trial court's factual findings if they are supported by competent evidence, and we review its legal conclusions de novo. People v. Kazmierski, 25 P.3d 1207, 1210 (Colo.2001).
B. Analysis
¶ 41 Crim. P. 41.1 allows a court to order the collection of nontestimonial evidence from a suspect so long as certain requirements are met. Subsection (h)(2) of the rule lists saliva samples as "nontestimonial" evidence. The Colorado Supreme Court upheld the facial constitutionality of Crim. P. 41.1 in People v. Madson, 638 P.2d 18 (Colo.1981).
¶ 42 Wilson does not assert that the order failed to comply with Crim. P. 41.1, but rather that the collection of the saliva constituted a warrantless search in violation of his Fourth Amendment rights. However, we are bound by the supreme court's decision in Madson, 638 P.2d at 33. Accordingly, we conclude that Wilson's constitutional rights were not violated by the collection of his saliva, and thus the trial court did not err in denying the motion to suppress.
V. Habitual Offender Statute
¶ 43 Wilson asserts that the Colorado Habitual Offender Statute, 18-1.3-801, C.R.S.2012, is unconstitutional because it does not permit jury trials of habitual offender charges. We discern no error.
A. Standard of Review
¶ 44 We review constitutional challenges to statutes de novo. Lopez v. People, 113 P.3d 713, 720 (Colo.2005).
B. Analysis
¶ 45 Following Wilson's sentencing, the trial court (through Judge Gilman) conducted a hearing in which it convicted Wilson of three habitual counts. Wilson argues that his Sixth Amendment rights were violated because the court, rather than a jury, made the habitual criminality findings. Wilson premises his argument on two Supreme Court cases- Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
¶ 46 Divisions of our court have consistently upheld the constitutionality of the statute in light of both Apprendi and Ring. See People v. Green, 2012 COA 68, ¶ 37, 296 P.3d 260, 2012 WL 1435936 (rejecting argument based on Ring and collecting cases); People v. Moore, 226 P.3d 1076, 1089-90 (Colo.App.2009) (rejecting argument based on Apprendi and collecting cases). We decline to depart from these decisions.
*20 VI. Telephone Recording
¶ 47 Wilson contends the trial court erred in denying his request to admit the entirety of a twenty- to thirty-minute recorded phone call, instead of a ninety-second redacted version offered by the prosecutor. We disagree.
A. Standard of Review
¶ 48 We review a trial court's evidentiary ruling on the probative value and the prejudicial impact of evidence for abuse of discretion. Hock v. New York Life Ins. Co., 876 P.2d 1242, 1251 (Colo.1994) ; People v. Muniz, 190 P.3d 774, 784 (Colo.App.2008). A trial court abuses its discretion when its evidentiary ruling is shown to be manifestly arbitrary, unreasonable, or unfair. Muniz, 190 P.3d at 784.
B. Analysis
¶ 49 The "rule of completeness," CRE 106, states that when a recorded statement, or part thereof, is introduced, the adverse party may require the introducing party to play any other part of the recording that in fairness ought to be considered contemporaneously. "However, the rule 'is subject to the same considerations of relevancy and potential prejudice as other evidence.' Thus, a court 'may properly exclude part of a statement if it is irrelevant or prejudicial, while allowing admission of another part of the same statement.' " Muniz, 190 P.3d at 787 (citations omitted) (quoting People v. Melillo, 25 P.3d 769, 775-76 (Colo.2001) ).
¶ 50 Here, the trial court properly held that evidence to be admitted under the rule of completeness is subject to the requirements of CRE 401 and 403. After receiving an offer of proof from Wilson regarding the contents of the recording, the court found that the remainder of the recording related to "character evidence and testimony and state of mind of the defendant, none of which is properly in evidence before this Court or this jury to consider." Based on this finding, the court denied Wilson's request to include the remainder of the recording.
¶ 51 The trial court's decision to deny Wilson's request is supported by the record. Wilson's offer of proof stated that much of the recording concerned his general fears about incarceration and his suspicions that his wife was unfaithful. We conclude the trial court's decision was not an abuse of discretion.
¶ 52 We decline to consider Wilson's other evidentiary arguments on appeal, because they are unlikely to recur on retrial.
¶ 53 The judgment and sentence are reversed, and the case is remanded for a new trial.
Judge WEBB and Judge LOEB concur.

Although the Batson court did not discuss structural error, it concluded that when the trial court decides that the facts establish a prima facie case of racial discrimination that is not rebutted by a race-neutral explanation by the prosecutor, reversal of a conviction is required. Batson, 476 U.S. at 100, 106 S.Ct. 1712.

In reaching this conclusion, we do not also conclude that the prosecutor acted out of racial animus. Rather, we only determine that the prosecutor's race-neutral explanations for challenging Mr. E were not supported by the record.