FILED
United States Court of Appeals
Tenth Circuit

November 7, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

RANDY PHIPPS,

    Petitioner - Appellant,

v.

RICK RAEMISCH, Director of the
Colorado Department of Corrections;
MICHAEL MILLER, Warden; THE
ATTORNEY GENERAL OF THE STATE
OF COLORADO,

    Respondents - Appellees.

No. 18-1396
(D.C. No. 1:17-CV-01833-PAB)
(D. Colo.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY***
_____

Before **MATHESON**, **PHILLIPS**, and **CARSON**, Circuit Judges.
_____

Randy Phipps, a state prisoner appearing pro se, seeks a certificate of appealability

(COA) to appeal the district court's denial of his application for habeas relief under

28 U.S.C. § 2254.  He also seeks leave to proceed *in forma pauperis* ("*ifp*").  Exercising

jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we deny his requests for a COA and to

proceed IFP and dismiss this matter.[1]

---

    * This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

    [1] Because Mr. Phipps is pro se, we construe his filings liberally, but we do not act as his advocate.  *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

## I. BACKGROUND

### A. *State Court Proceedings*

In 2011, Mr. Phipps pled guilty to sexual assault on a child by a person in a position of trust and as part of a pattern of sexual abuse. The state court sentenced him to an indeterminate prison term of seventeen years to life. He did not appeal.

In 2014, Mr. Phipps filed a motion for postconviction relief under Colo. R. Crim. P. 35(c) asserting multiple ineffective assistance of counsel ("IAC") claims. The state district court denied the motion, and Mr. Phipps appealed. The Colorado Court of Appeals ("CCA") affirmed after considering Mr. Phipps's IAC claims on the merits. In doing so, it summarized the facts and procedural history of Mr. Phipps's case as follows:[2]

> During an investigation to detect child pornography shared over the Internet, the police remotely searched a computer onto which at least two files depicting child pornography had been downloaded. Using that computer's Internet Protocol (IP) address, the police determined that the computer was located in Phipps' home. The police obtained and executed a search warrant of Phipps' home.

> Phipps was not home at the time of the search, but an officer spoke with him on the phone during the search and explained why his home was being searched. During that recorded phone call, Phipps admitted that he stored child pornography on his computer and that once the officer searched his computer, "his life was over." The police seized Phipps' computer, on which they found over thirty videos of children engaged in sexual acts.

> One of these videos depicted Phipps' stepdaughter when she was approximately eight or nine years old. She was mostly nude, and the video showed Phipps instructing her to use sex toys as well as Phipps using sex toys on her. In her police interview, Phipps' stepdaughter identified herself

---

[2] In reviewing a § 2254 application, "[w]e presume that the factual findings of the state courts to be correct" unless the applicant presents clear and convincing evidence to the contrary. *Fairchild v. Workman,* 579 F.3d 1134, 1139 (10th Cir. 2009); *see* 28 U.S.C. § 2254(e)(1). Mr. Phipps does not challenge the state court's determination of the facts stated above.

and Phipps in the video and stated that Phipps had sexually assaulted her numerous times.

Phipps was charged with sexual assault on a child (position of trust—pattern of abuse) under sections 18–3–405.3(1), (2)(b), C.R.S. 2016; aggravated incest under section 18–6–302(1)(a), C.R.S. 2016; sexual exploitation of a child (inducement) under section 18–6–403(3)(a), C.R.S. 2016; and sexual exploitation of children (possession) under section 18–6–403(3)(b.5). The court found Phipps indigent and appointed counsel to represent him.

A plea agreement was negotiated and Phipps pleaded guilty to the sexual assault charge. In exchange, the district attorney dismissed the remaining charges and promised that the United States Attorney would not prosecute Phipps on child pornography charges.

At the sentencing hearing, Phipps took full responsibility for his crimes. He stated that he did not wish to put his family through a "horrific ordeal with a jury trial," and that his "remorse, regrets, shame, despair, sadness, and sorrow cannot be measured."

In his motion for postconviction relief, Phipps made numerous claims of ineffective assistance of counsel. The arguments Phipps renews on appeal are:

- His counsel failed to challenge the legality of the initial, remote search of Phipps's computer, which violated his Fourth Amendment rights.
  . . .
- His counsel's failure to investigate and challenge the prosecution's forensic computer evidence or hire an expert to do so constituted deficient performance.

- His counsel failed to advise him that, as a condition of his parole eligibility, he might be required to reveal past crimes, exposing him to additional criminal charges.

- His counsel failed to advise him that evidence of his crimes might be destroyed after he pleaded guilty.
  . . .
- His counsel misadvised him about the minimum amount of prison time he would have to serve before being eligible for parole.

3

- His counsel misled him with regard to whether he was pleading guilty to a crime of violence.

The district court did not hold a hearing, but concluded that the existing record demonstrated that Phipps' claims failed one or both prongs of *Strickland* [*v. Washington*, 466 U.S. 668 (1984)].

*People v. Phipps*, 411 P.3d 1157, 1160-61 (Colo. App. 2016) (paragraph numbers omitted) (also available at R. Vol. 2 at 301, 302-06).

The CCA affirmed the trial court's order denying Mr. Phipps's claims for postconviction relief because his "allegations were bare and conclusory in nature, directly refuted by the record, and, even if proven true, would have failed to establish one of the prongs of the test prescribed in *Strickland*." *Id.* at 1160. It did not, however, address his cumulative-error argument. The Colorado Supreme Court denied Mr. Phipps's application for certiorari.

## B. *Federal District Court Proceedings*

Mr. Phipps next filed this action challenging his conviction under 28 U.S.C. § 2254. He asserted 13 claims. Claims 1-7 each attempted to allege both an IAC claim and one or more separate but related constitutional claims.[3] Claims 8 and 10 alleged state constitutional errors. Claims 11 and 13 alleged IAC. And Claims 9 and 12 alleged cumulative error.

After an initial round of briefing by the parties, the district court issued a detailed order assessing which claims Mr. Phipps had exhausted and whether the unexhausted

---

[3] For example, in Claim 1, Mr. Phipps alleged counsel was ineffective by coercing his guilty plea, and also alleged violation of equal protection and due process as a result of the allegedly coerced plea.

claims were procedurally barred ("Procedural Order"). The court concluded Mr. Phipps had failed to exhaust his non-IAC federal constitutional claims, which were asserted as part of Claims 1-7 and in Claims 8 and 10 of his habeas application. The court further concluded these claims were procedurally defaulted because they would be procedurally barred under state law if he attempted to present them to the state court. The district court therefore dismissed these non-IAC constitutional claims with prejudice. This left the IAC allegations in Claims 1-7, 11, and 13; and the cumulative error allegations in Claims 9 and 12.

After receiving additional briefing from the parties, the district court issued a second lengthy order ("Merits Order"). It reviewed Mr. Phipps's exhausted claims under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d), except for his cumulative-error claims, which it reviewed de novo. Based on this review, the court concluded Mr. Phipps was not entitled to habeas relief and dismissed his case with prejudice. It also denied a COA and denied leave for Mr. Phipps to proceed *ifp* on appeal.

Mr. Phipps (1) requests a COA to appeal portions of the Procedural Order[4] and the entirety of the Merits Order; (2) seeks to appeal the district court's failure to grant his "Motion to Object, Compel, and Sanction," which he filed two days before the district court dismissed the case; and (3) renews his *ifp* request.

---

[4] Mr. Phipps does not challenge the district court's ruling that he had failed to exhaust Claims 8 and 10 and that they must be dismissed as procedurally defaulted.

5

## II. DISCUSSION

### A. *COA Standard*

We must grant a COA to review a district court's denial of a § 2254 petition.

*See* 28 U.S.C. § 2253(c)(1)(A). To receive a COA, the petitioner must make "a

substantial showing of the denial of a constitutional right," *id.* § 2253(c)(2), and must

show "that reasonable jurists could debate whether . . . the petition should have been

resolved in a different manner or that the issues presented were adequate to deserve

encouragement to proceed further," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)

(internal quotation marks omitted).

Under AEDPA, when a state court has adjudicated the merits of a claim, a federal

district court cannot grant habeas relief on that claim unless the state court's decision

"was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1),

or "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding," *id.* § 2254(d)(2).

When the district court has denied habeas relief because the petitioner failed to

overcome AEDPA, our COA decision requires us to determine whether reasonable jurists

could debate the court's application of AEDPA to the state court's decisions. *See*

*Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where, as here, the district court dismissed certain claims in the application on

procedural grounds, we will grant a COA as to those claims only if the applicant can

demonstrate both "that jurists of reason would find it debatable whether the petition states

6

a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

## B. *Analysis of COA Application*

Mr. Phipps is not entitled to a COA because reasonable jurists would not debate whether the district court correctly decided the issues he seeks to appeal.

### 1. **Claims Dismissed as Unexhausted**

In his amended § 2254 application, Mr. Phipps asserted an IAC claim and a non-IAC claim within each of his first seven listed claims. The district court dismissed each of the non-IAC claims, concluding they were unexhausted because Mr. Phipps had not fairly presented them to the state courts and also were procedurally barred.[5] *See* R. Vol. 2 at 182-94, 197-98. Mr. Phipps seeks a COA to challenge this procedural ruling as to these seven claims.

#### a. *Legal background*

Title 28 U.S.C. § 2254(b)(1) states: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State." To satisfy this exhaustion requirement, a state prisoner must fairly present his or her claims to the state's highest court—either by direct review or in a postconviction

---

[5] The district court dismissed Mr. Phipps's non-IAC constitutional claims with prejudice upon finding these claims were procedurally barred. Mr. Phipps does not challenge this finding, but only the district court's threshold finding that the claims were unexhausted.

7

attack—before asserting them in federal court. *See Fairchild v. Workman*, 579 F.3d 1134, 1151 (10th Cir. 2009) ("Exhaustion requires that the claim be fairly presented to the state court." (internal quotation marks omitted)); *Brown v. Shanks*, 185 F.3d 1122, 1124 (10th Cir. 1999) ("The exhaustion requirement is satisfied if the issues have been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack." (internal quotation marks omitted)).

"Fair presentation of a prisoner's claim to the state courts means that the substance of the claim must be raised there." *Patton v. Mullin*, 425 F.3d 788, 809 n.7 (10th Cir. 2005) (internal quotation marks omitted). To satisfy the "fair presentation" requirement, "[t]he prisoner's allegations and supporting evidence must offer the state courts a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Id.* (internal quotation marks omitted). The "petitioner bears the burden of demonstrating that he has exhausted his available state remedies." *McCormick v. Kline*, 572 F.3d 841, 851 (10th Cir. 2009) (internal quotation marks omitted).

When a federal court determines that an applicant's claims are not exhausted, it may deny the claims on the merits, *see* 28 U.S.C. § 2254(b)(2), or dismiss the unexhausted claims without prejudice to allow the applicant to return to state court to exhaust the claims, *see Bland v. Sirmons*, 459 F.3d 999, 1012 (10th Cir. 2006). Permitting the applicant to return to state court is not appropriate, however, if the applicant's claims are subject to an anticipatory procedural bar. *See id.*; *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014) ("Anticipatory procedural bar occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally

8

barred under state law if the petitioner returned to state court to exhaust it." (internal quotation marks omitted)).

When a federal court applies an anticipatory procedural bar to a habeas applicant's claims, the applicant's claims are "considered *exhausted* and *procedurally defaulted* for purposes of federal habeas relief." *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) (emphases added); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) ("In habeas, state-court remedies are described as having been 'exhausted' when they are no longer available, regardless of the reason for their unavailability."); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (noting that "there is a procedural default for purposes of federal habeas review" if "the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred"); *Cannon v. Gibson*, 259 F.3d 1253, 1266 n.11 (10th Cir. 2001) (same).

There are two circumstances where a federal court may nevertheless consider claims subject to an anticipatory procedural bar: (1) if the prisoner has alleged sufficient "cause" for failing to raise the claim and resulting "prejudice," *Coleman*, 501 U.S. at 750, or (2) if denying review would result in "a fundamental miscarriage of justice," *id.*, because the applicant has made a "credible" showing of actual innocence, *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). *See Frost*, 749 F.3d at 1231.

b. *Analysis*

Mr. Phipps argues he met this burden to show exhaustion because he (1) informed the state court in his memorandum of law supporting his postconviction motion that

9

"there [were] multiple issues infused into each claim of this motion," COA Appl. at 6 (quoting St. Ct. R., Doc. 43, at 3 (available on St. Ct. R. CD, Doc. 43, in the district court docket)); (2) "framed the issues in his IAC motions as United States Constitutional violations," *id.*; and (3) cited "numerous" Supreme Court, Tenth Circuit and other federal appellate decisions to support the alleged constitutional issues, *id.*

Mr. Phipps fails to cite to any part of the state court record demonstrating that he fairly presented a specific non-IAC constitutional claim to the state court. He may not rely on mere conclusory allegations and must instead support his arguments with "citations to the authorities and parts of the record on which [he] relies." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840-41 (10th Cir. 2005) (internal quotation marks omitted). Mr. Phipps's briefing of the exhaustion issue is deficient under this standard, which forfeits appellate consideration of this issue. *See id.* at 841; *see also Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).

Even if we were to overlook Mr. Phipps's deficient briefing, his conclusory assertions fail to meet his burden of demonstrating exhaustion of his available state remedies for each non-IAC claim included in Claims 1-7 of his habeas application. Nor does he offer any reason for jurists to debate the district court's ruling that his IAC claims did not fairly present his allegations of separate and analytically distinct constitutional violations to the state court for decision.[6]

---

[6] *See, e.g.*, Procedural Order, R. Vol. 2 at 185-86 (citing *Kimmelman v. Morrison*, 477 U.S. 365, 374-75 (1986) (explaining that applicant's Sixth Amendment IAC claim alleging counsel failed to pursue a Fourth Amendment claim was not identical to the

10

Not only has Mr. Phipps failed to show exhaustion of his non-IAC claims, he has not even attempted to contest the district court's determination that they are subject to anticipatory procedural bar. Further, he has not shown sufficient cause for failure to raise these claims or shown that he is actually innocent.

We thus deny Mr. Phipps's request for a COA on the district court's dismissal of the non-IAC constitutional claims as unexhausted, subject to anticipatory procedural bar, and procedurally defaulted.

2. **Claims Dismissed on the Merits**

The claims that remained after the district court's exhaustion and procedural default analysis each alleged Mr. Phipps received ineffective assistance of counsel in violation of the Sixth Amendment.

a. *Legal background—ineffective assistance of counsel*

The Supreme Court clearly established the ineffective assistance of counsel standard in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of (1) deficient performance that (2) causes prejudice. *Id.* at 687. The first step requires showing that defense counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Id.* The

---

defaulted Fourth Amendment claim because the claims are "distinct, both in nature and in the requisite elements of proof"); *White v. Mitchell*, 431 F.3d 517, 525-26 (6th Cir. 2005) (holding claim that counsel was ineffective for failing to raise equal protection challenge to jury selection did not exhaust related claim that prosecution violated applicant's right to equal protection in selecting the jury); *Rose v. Palmateer*, 395 F.3d 1108, 1110-12 (9th Cir. 2005) (holding claim that counsel was ineffective for failing to seek suppression of confession did not exhaust claim that confession was involuntary because the claims are distinct and must be "separately and specifically presented to the state courts")).

performance assessment is "highly deferential." *Id.* at 689. Counsel's actions are presumed to constitute "sound trial strategy." *Id.* (internal quotation marks omitted). At the second step, *Strickland* requires a demonstration that counsel's errors and omissions resulted in actual prejudice, *id.* at 687; that is, "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When coupled with AEDPA, the *Strickland* standard is doubly deferential. *See Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). This is so because "[w]e take a highly deferential look at counsel's performance," as required by *Strickland*, "through the deferential lens of § 2254(d)." *Cullen*, 563 U.S. at 190 (internal quotation marks omitted).

  b. *Analysis of the claims*

    i. Causing Mr. Phipps to plead guilty to a crime of violence

In Claim 1 of his habeas application, Mr. Phipps asserted his counsel misled and coerced him into pleading guilty to a crime of violence. He alleged that he would have gone to trial rather than "plead[] guilty to a crime of violence, or a crime associated with violence in any way." R. Vol. 1 at 255 (internal quotation marks omitted).

The CCA held this claim failed both prongs of the *Strickland* standard. It found counsel's performance was not deficient because (1) he reasonably construed his client's position to be that he would never plead guilty to a crime that involved violence; (2) counsel informed the court at the plea hearing that Mr. Phipps denied using or

12

threatening violence when he sexually assaulted his step-daughter; and (3) the crime to which Mr. Phipps pled guilty, sexual assault on a child by a person in a position of trust as part of a pattern of sexual abuse, *see* Colo. Rev. Stat. § 18-3-405.3(1), (2)(b), is neither defined as a crime of violence nor includes the use or threat of violence as one of its elements. *See Phipps*, 411 P.3d at 1166. On the prejudice prong, the CCA concluded Mr. Phipps's own statement of reasons to the court for pleading guilty—that he wanted to take full responsibility for his crime and not put the victim and his family through the ordeal of a jury trial—established there was no reasonable probability that he would have proceeded to trial but for his counsel's allegedly deficient performance on this issue. *See id.*

Mr. Phipps argued in his habeas application that the CCA erred in concluding he had not pled guilty to a crime of violence because his non-violent crime was treated as a crime of violence for sentencing and thus was considered a "per se" crime of violence under Colorado law. *Chavez v. People*, 359 P.3d 1040, 1043 (Colo. 2015). But Mr. Phipps has not shown to be erroneous the CCA's factual findings that his counsel reasonably understood his client would not plead guilty to a crime that involved violent conduct and that he and Mr. Phipps both informed the state court of this position.[7] Under AEDPA, these factual findings are presumed correct unless the habeas applicant rebuts them by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

---

[7] Mr. Phipps declares in his COA application that the "crime of violence" issue is separate from the "violent crime" issue. COA Appl. at 10. To the extent he intended this as a challenge to the district court's assessment of the CCA's decision on this issue, he failed to explain the basis for this challenge or support it with citations to the record.

13

The only evidence Mr. Phipps mentions is "material evidence in letters not yet allowed in the record." COA Appl. at 10. But AEDPA limits review of a state court decision to the record that was before the state court. *See Cullen*, 563 U.S. at 181 (limiting review under § 2254(d)(1) to "the record that was before the state court that adjudicated the claim on the merits"); 28 U.S.C. § 2254(d)(2) (limiting review "to the evidence presented in the State court proceeding").[8] As a result, Mr. Phipps has not overcome the presumption that these state court findings are correct.

The district court concluded Mr. Phipps had failed to demonstrate that the CCA's rejection of this IAC claim was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the

---

[8] At some points in his COA application, Mr. Phipps appears to argue that the district court erred by not holding an evidentiary hearing that would have allowed him to present evidence that was not considered by the Colorado courts. But AEDPA limits the availability of a federal evidentiary hearing in habeas proceedings, providing a hearing shall not be held unless the applicant makes certain showings. *See* 28 U.S.C. § 2254(e)(2); *Milton v. Miller*, 744 F.3d 660, 672-73 (10th Cir. 2014). Mr. Phipps has not attempted to demonstrate that he complied with AEDPA's requirements for obtaining an evidentiary hearing. In particular, he has not shown that the evidence he would present in a hearing could not have been discovered and presented to the state court through the exercise of due diligence. *See Milton*, 744 F.3d at 672-73 (stating that "where a state habeas petitioner has failed to develop the factual basis of a claim in State court proceedings," he "must show that he made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court in the manner prescribed by state law" (internal quotation marks omitted)). Under these circumstances, the district court did not abuse its discretion in failing to hold an evidentiary hearing. *See Fairchild*, 579 F.3d at 1147 (applying abuse of discretion standard to denial of evidentiary hearing). Mr. Phipps is not entitled to a COA on this issue because reasonable jurists would not debate the district court's denial of an evidentiary hearing. Even if a COA were not required, *see Harbison v. Bell*, 556 U.S. 180, 183 (2009), the foregoing discussion shows no error.

14

facts in light of the evidence presented in the state court. R. Vol. 2 at 359-61. Mr. Phipps has not demonstrated that reasonable jurists would debate the district court's conclusion. We therefore deny a COA on this claim.

ii. Failing to raise a Fourth Amendment challenge to the search of his home computer[9]

In Claims 2 and 3 of his § 2254 application, Mr. Phipps alleged his counsel was ineffective because he failed (1) to raise a Fourth Amendment challenge to the police's initial remote warrantless search of his home computer and (2) to investigate and prove that law enforcement lied about the software on his computer in the affidavit supporting the search warrant for the computer. The CCA rejected both claims, holding counsel's inaction, even if it constituted deficient performance, did not prejudice Mr. Phipps because both the initial remote search and the search warrant were lawful. *See Phipps*, 411 P.3d at 1163.

On the remote search, the CCA held that Mr. Phipps, having downloaded a peer-to-peer sharing software, did not have a legitimate expectation of privacy in the home computer files. *See id.* at 1162-63. The warrantless search thus did not violate the Fourth Amendment. In reaching this conclusion, the CCA considered and rejected as

---

[9] The Supreme Court has held that defendants may not bring Fourth Amendment challenges in habeas proceedings when they could have raised the same challenges in pretrial proceedings. *Stone v. Powell*, 428 U.S. 465, 494 (1976). But a habeas petitioner may allege counsel was ineffective for failure to move to suppress. In *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986), the Supreme Court held that although habeas petitioners may not raise Fourth Amendment arguments, they may allege counsel's ineffectiveness for failing to file a timely motion to suppress evidence allegedly obtained in violation of the Fourth Amendment.

15

immaterial Mr. Phipps's argument that the remote search was unlawful because the police improperly identified the peer-to-peer sharing software he had downloaded as LimeWire, when in fact he had downloaded LimeWire's sister program, FrostWire. *See id.* at 1162 n.3. The CCA also rejected Mr. Phipps's argument that he retained a reasonable expectation of privacy in his home computer files because he intended to keep them private and was not aware that they were publicly available through the peer-to-peer sharing software he had installed. *See id.* at 1163. The CCA further concluded that because the initial remote search of Mr. Phipps's computer was lawful and discovered unlawful child pornography, the resulting issuance of the search warrant also was lawful. *See id.*

In his habeas application, Mr. Phipps renewed his claims that the remote search and search warrant were unlawful because the police and the state courts misidentified the peer-to-peer sharing software he used as LimeWire and he subjectively had intended to keep his home computer files private. The district court rejected the first contention because he had not presented clear and convincing evidence to overcome the CCA's key factual finding that police had discovered child pornography on Mr. Phipps's computer because he had installed peer-to-peer sharing software. *See* R. Vol. 2 at 364-65. It further found the CCA had correctly relied upon relevant Fourth Amendment authority in concluding Mr. Phipps had no reasonable expectation of privacy in the files downloaded to a publicly accessible folder through file sharing software. *See id.* at 365-66. As a result, Mr. Phipps had not shown that his counsel's failure to raise a Fourth Amendment challenge to the computer searches was objectively unreasonable or that he was

16

prejudiced by his counsel's inaction. The district court therefore concluded that the CCA's denial of these IAC claims was not contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts. *See id.* at 366-67.

Mr. Phipps does not address the district court's conclusions under AEDPA in his COA application or address the legal authority on which the CCA relied in deciding the computer searches were lawful. He thus has not demonstrated that reasonable jurists would debate the district court's denial of habeas relief on these claims. We deny a COA on them.

### iii. Computer evidence and the state's forensic procedures

#### 1) Claims 4, 5, 6

In Claims 4, 5 and 6, Mr. Phipps asserted his counsel failed to investigate or hire an expert to review the computer evidence against him or the state's forensic procedures. He also alleged that his counsel did not ensure that the state preserved the computer evidence and the results of its "botched" forensic examination. R. Vol. 1 at 267; *see id.* at 266-69.

The CCA rejected these claims because Mr. Phipps appeared to assert that the computer evidence, if properly investigated, would have shown that he never shared pornographic material on the internet. The CCA held this assertion was irrelevant to the crime of sexual assault on a child, the only charge to which Mr. Phipps pled guilty, or the other charged crimes. *See Phipps*, 411 P.3d at 1164. Further, the CCA held, even if his counsel's performance was deficient as alleged, Mr. Phipps could not establish prejudice

17

because he "admitted that he possessed numerous files containing child pornography on his computer, and that he had produced a video of him sexually assaulting his underage stepdaughter." *Id.*

The district court denied habeas relief on these claims. It determined that Mr. Phipps had not demonstrated that the CCA's decision was contrary to or was an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence before the state court. *See* R. Vol. 2 at 368-69.

In his COA application, Mr. Phipps does not address the district court's conclusions. He instead insists the computer evidence, if properly investigated and preserved, would have (1) substantiated his Fourth Amendment claims relating to the searches of his home computer, and (2) been essential to his defense in other unexplained ways. He also asserts he would not have pled guilty to sexual assault on a child if he had known his counsel had not addressed the computer evidence to his satisfaction.

These arguments are conclusory and unsupported by record citations or authority. Mr. Phipps fails to explain how investigation and preservation of the computer evidence or the state's forensic examination pertained to his crime of sexual assault on a child or his decision to plead guilty to this crime. Most important, these arguments fail to show that reasonable jurists would debate the district court's denial of habeas relief on these claims under AEDPA's strict standards.

### 2) Claim 7

Mr. Phipps raised a related claim in Claim 7. He alleged that his counsel was ineffective because he did not inform him that the state had "wiped" or destroyed the hard drive on his home computer after examining it and that he would not have pleaded guilty if he had known this had happened.

The CCA rejected this claim, concluding the record demonstrated Mr. Phipps's counsel had advised him this evidence might not be preserved. *See Phipps*, 411 P.3d at 1165. The CCA said Mr. Phipps also had not shown prejudice because, in view of his own admissions and "the overwhelming evidence of his guilt, there is no reasonable likelihood that Phipps would have changed his decision to plead guilty merely because evidence of his crimes might be destroyed." *Id.*[10]

The district court found Mr. Phipps's conclusory allegations in his habeas application failed to demonstrate the CCA court ruling was contrary to or involved an unreasonable application of clearly established law or was based on an unreasonable determination of the facts. *See* R. Vol. 2 at 369-71. Mr. Phipps does not squarely address this conclusion in his COA application or put forward any reason that reasonable jurists might debate it. We deny a COA on this issue.

---

[10] For example, Mr. Phipps admitted to sexually assaulting his step-daughter during his allocution at the sentencing hearing and later in a motion for reconsideration of his sentence.

19

#### iv. Falsifying transcripts

In Claim 7, Mr. Phipps contends his counsel conspired with the state to falsify the transcript of his sentencing hearing. He alleged this transcript was altered to omit the prosecutor's statements about wiping the hard drives on Mr. Phipps computer and not conducting a professional forensic examination of the computer evidence.

The CCA rejected this claim, finding there was "no evidence whatsoever on this record that the sentencing transcript was altered" and that Mr. Phipps had not identified how he was prejudiced by the alleged alteration. *Phipps*, 411 P.3d at 1166. The district court denied habeas relief after concluding Mr. Phipps had not demonstrated the CCA's ruling was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the state court record. *See* R. Vol. 2 at 369-71.

Mr. Phipps's arguments on this issue in his COA application are conclusory, unsupported, and do not address the CCA's and district court's holdings that he had failed to show any prejudice from his counsel's participation in allegedly altering the transcript. Reasonable jurists would not debate the district court's denial of relief on this claim, and we therefore deny a COA.

#### v. Sexual history interview required by plea agreement

Mr. Phipps argues in Claim 11 that his counsel failed to advise him that the sexual history interview to which Mr. Phipps agreed in his plea agreement "may carry the risk of

prosecution" if he revealed past sexual crimes during the interview.  R. Vol. 1 at 274.[11]

The CCA denied this claim because the record showed Mr. Phipps agreed to participate in this review, "which would reasonably include past sexual crimes."  *Phipps*, 411 P.3d at 1165.

The district court held Mr. Phipps had failed to demonstrate that the CCA's decision was contrary to or based on an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts as required to obtain habeas relief under AEDPA.  *See* R. Vol. 2 at 371-73.  In his COA application, Mr. Phipps does not address the district court's conclusion or its examination of this claim under AEDPA.  At no time has Mr. Phipps identified clearly established Supreme Court law on this issue.  Reasonable jurists would not debate that Mr. Phipps failed to show he is entitled to habeas relief on this claim.

### vi.  Parole eligibility

In Claim 13, Mr. Phipps asserted his counsel erroneously advised him that he would be eligible for parole after serving "60% or less" of his prison sentence.  R. Vol. 1 at 275.  Instead, he claimed he is not eligible for parole until he serves 100 percent of his sentence, and that he would not have pled guilty if he had known this.

The CCA denied this claim upon finding Mr. Phipps acknowledged in his plea agreement that he understood he would be eligible for parole only "upon completion of the minimum incarceration specified in the indeterminate sentence."  *Phipps*, 411 P.3d

---

[11] Mr. Phipps does not assert that either possibility, self-incrimination or prosecution, has come to pass.

at 1165 (internal quotation marks and emphasis omitted). The court also held that even if the advice Mr. Phipps received from counsel conflicted with the plea agreement, Mr. Phipps could not seek postconviction relief on this basis because he had not asked the state court to clarify the issue when given an opportunity to do so at the plea hearing. *See id.* The district court denied habeas relief on this claim because Mr. Phipps had not rebutted the presumption that the CCA's factual finding regarding Mr. Phipps's knowledge of the parole requirements was correct or had not shown that the CCA's denial of the claim was contrary to or an unreasonable application of clearly established federal law. *See* R. Vol. 2 at 374-75.

In his COA application, Mr. Phipps again fails to squarely address the basis for the district court's decision. Also, he makes the conclusory assertion that he would not have pled guilty but for his counsel's inaccurate advice on this issue because "he had nothing to loose [sic] by insisting on trial." COA Appl. at 50. But this statement conflicts with the CCA's finding, based on Mr. Phipps's own statements at the sentencing hearing, that he decided to plead guilty because it was "[t]he only right and proper choice" and that he wished to take "full responsibility" for what he had done and to spare the victim and his family "the horrific ordeal" of a jury trial. *Phipps*, 411 P.3d at 1166 (internal quotation marks omitted). Reasonable jurists would not debate that the district court properly denied this claim.

\* \* \* \*

As to each of his IAC claims, Mr. Phipps fails to address the AEDPA standards he must meet to obtain habeas relief, and therefore fails to show that reasonable jurists could

22

debate the district court's rejection of these claims. We find no basis on which to grant a COA.

### 3. Cumulative-Error Claims

In Claims 9 and 12 of his habeas application, Mr. Phipps asserted that his counsel's deficient performance and deliberate lies to him "throughout the [state] proceeding," R. Vol. 1 at 272, resulted in cumulative error that prejudiced him. The district court reviewed these claims without reference to AEDPA's deferential standards because Mr. Phipps asserted cumulative error in his state postconviction briefs and the CCA did not address it. *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003) (holding AEDPA standards do not apply when state courts have not denied claim on the merits).

The district court held Mr. Phipps was not entitled to habeas relief on his cumulative-error theory because the court had "not found two or more constitutional errors during Mr. Phipps's criminal proceedings that would warrant a cumulative-error analysis." R. Vol. 2 at 375; *see Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013) (holding "the only otherwise harmless errors that can be aggregated [under the cumulative-error doctrine] are federal constitutional errors" (internal quotation marks omitted)). In his COA application, Mr. Phipps disagrees with the district court's conclusion that he failed to demonstrate constitutional errors, but offers no argument casting doubt on this conclusion. He has not demonstrated a basis for reasonable jurists to debate the district court's denial of his cumulative-error claims.

4. **Denial of Motion to Compel**

Finally, Mr. Phipps challenges the district court's alleged failure to address his "Motion to Object, Compel, and Sanction." Mr. Phipps filed this motion on September 10, 2018, months after the parties completed briefing on his § 2254 application and two days before the district court entered the Merits Decision dismissing it. In the motion, Mr. Phipps accused the Respondents of defying the district court's standard order requiring them to file with the district court "a copy of the complete record of [Mr. Phipps's] state court proceedings . . ., including physical evidence that is relevant to the asserted claims." *See* R. Vol. 2 at 199. In his COA application, Mr. Phipps argues the Respondents violated this order by not producing any physical evidence and that the district court abused its discretion in dismissing this case without compelling Respondents to do so.

Although the district court did not expressly rule on the motion, it effectively denied it when it dismissed Mr. Phipps's § 2254 application at the conclusion of the Merits Order and entered judgment against him the next day. *See Drake v. City of Ft. Collins*, 927 F.2d 1156, 1163 (10th Cir. 1991) (concluding district court's order dismissing plaintiff's complaint impliedly denied pending motions). Mr. Phipps has not shown the district court abused its discretion in doing so. *See Norton v. City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005) (applying abuse of discretion standard).

First, Mr. Phipps fails to demonstrate that the Respondents violated the district court's order regarding production of physical evidence. The order required only that they include in the record "physical evidence [in the state court files] that is relevant to

24

the asserted claims." R. Vol. 2 at 199. Mr. Phipps does not describe in his COA application what allegedly relevant physical evidence the Respondents failed to produce. It appears from the motion that he was referring primarily to the hard drives and other computer-related evidence seized from his home. The state court records show that this and other physical evidence from his home was destroyed or wiped clean and returned to his family under to the "Evidence Disposition Agreement" that Mr. Phipps signed on the same day as his sentencing hearing. *See* St. Ct. R., Doc. 15, at 62-67. These items therefore would not have been in the state files for the Respondents to produce.

Mr. Phipps also acknowledged in his habeas application that the computer evidence was not preserved because he alleged he received ineffective assistance of counsel based on its destruction. To the extent Mr. Phipps asserts the Respondents should have produced other physical evidence in response to the district court's order, his allegations are vague and conclusory and are therefore inadequate. *See Garrett*, 425 F.3d at 840-41.[12]

---

[12] Mr. Phipps was not diligent in seeking to compel disclosure of any allegedly relevant physical evidence. He first raised the issue in a motion filed with the district court on April 13, 2018, before Respondents filed their answer to his application. The district court denied this motion, holding it was premature and that Mr. Phipps had not shown a specific need for the evidence, but also stated Mr. Phipps could renew the motion after the Respondents answered "if he can demonstrate that specific portions of the record are necessary to establish that he is entitled to federal habeas relief." R. Vol. 2 at 219. But Mr. Phipps did not renew this request until September 10, 2018, four and half months after the Respondents filed their answer and more than three months after Mr. Phipps filed his reply. If Mr. Phipps believed specific physical evidence was in the state court file and was necessary to establish his entitlement to habeas relief, he should have renewed his motion before briefing was completed on his habeas application.

Finally, even assuming the district court abused its discretion in failing to grant the motion, this error is harmless if it did not affect Mr. Phipps's substantial rights. *See* Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). Based on our review of the motion and Mr. Phipps's argument we conclude the district court's error, if any, was harmless under this standard. Mr. Phipps is not entitled to a COA on this issue because reasonable jurists would not debate the district court's denial of his motion to compel. Further, even if a COA were not required, *see Harbison v. Bell*, 556 U.S. 180, 183 (2009), the foregoing discussion shows no error.

## III. CONCLUSION

Mr. Phipps has failed to show that reasonable jurists would find the district court's thorough and well-reasoned assessment of his § 2254 application debatable or wrong. Nor is there any basis for reasonable jurists to debate the district court's denial of Mr. Phipps's late-filed motion regarding the state court record. We therefore deny his application for a COA and dismiss this matter. And because Mr. Phipps has not presented "a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal," *Watkins v. Leyba*, 543 F.3d 624, 627 (10th Cir. 2008) (internal quotation marks omitted), we deny leave to proceed IFP and order him to pay the balance of the appellate filing fees.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

26